**WILLIAMS v. WEST.**

Court of Appeals of Kentucky.
March 27, 1953.

Rehearing Denied June 19, 1953.

Marshall P. Eldred, Brown, Greenebaum & Eldred, Louisville, for appellant.

S. Lloyd Cardwell, Rexford L. Hawkins, Louisville, for appellee.

DUNCAN, Justice.

This appeal presents some novel questions of law and an unfortunate state of facts which deserve our sympathetic consideration.

The appellant, Harry V. Williams, and appellee, Mary Shaw Williams West, were formerly husband and wife residing in the State of Texas. On September 18, 1936, the district court of Bexar County, Texas, granted appellee a divorce from appellant and awarded her the care, custody, and control of their three minor children, Bruce, Mary Frances, and Jack. The judgment directed appellant to pay to appellee for the support, maintenance, and education of the children the sum of $100 per month until further ordered by that court. Both parties have since remarried, but appellee, who now resides in Wichita, Kansas, was divorced from her second husband. The appellant now resides in Louisville, Kentucky, with his second wife and a child born of the subsequent marriage.

After the divorce, all of the children remained with their mother for about two years and thereafter they divided their time between their parents, generally spending the school periods with their mother and the vacation periods with their father. On June 1, 1942, the children visited their father in Louisville, and Mary Frances and Jack remained there until they had married. Bruce, who is now twenty-nine years of age, remained with his father until March, 1944, when he returned to his mother after a short visit with an aunt in Peoria, Illinois. Since that time, he has continuously resided with his mother.

The medical testimony discloses beyond question that Bruce is suffering from what has been diagnosed as Jacksonian epilepsy. When he was about two years of age, he suffered a fall in which he received a severe blow on his right forehead, and since that time he has had recurring attacks or convulsions. In 1937, when he was thir-

teen years of age, he was taken to Mayo's Clinic upon the advice of Dr. Melvin Cooper, of San Antonio, Texas, who is a specialist in nervous diseases. Thereafter, and extending over a period of time up to the taking of testimony in this case, he was treated by physicians in St. Louis, Missouri, Anadarko, Oklahoma, and Wichita, Kansas. He also spent approximately three months in Forest Park Sanitarium, Davenport, Iowa, in October, November, and December, 1944, and from December 10 to 17, 1945, in Wesley Hospital, Wichita, Kansas. The illness is characterized by convulsions particularly involving the right arm and face, and there is usually a lassitude and weakness of several days' duration preceding and following each attack. Either because of a mental involvment or on account of a complex arising from his illness, he is moody, depressed, and at times suffers loss of memory. His appearance is normal, and there is no physical underdevelopment.

Despite the handicap under which Bruce has lived, he has attempted to support himself by working. While living with his father during the war, and at a time when there was a scarcity of labor, he was able to obtain employment in Louisville at a filling station and later at Steiden Stores, where he worked about sixteen months, although he was frequently absent on account of illness. After returning to his mother, he worked a short time in a grocery store in Wichita, Kansas. During the latter employment, he had several convulsions, during which a fellow employee stated he would froth at the mouth and be unable to work for several days following each attack. He was discharged from his last position on account of his physical condition and has since been unable to secure employment.

The appellee instituted this action in the Jefferson Circuit Court, seeking by separately numbered paragraphs to recover: (1) $1,958.29, representing what she alleged was the amount by which appellant had defaulted in payments under the Texas judgment; (2) $700 for funds expended by her in providing extraordinary and neces-

sary medical expenses for Bruce after he returned permanently to her home and before he attained his majority; and (3) $1,013.95, representing funds expended by her for necessary medical services, care, and support furnished Bruce since he became twenty-one years of age, and seeking prospectively an allowance of $125 per month for his future treatment and maintenance. The Chancellor awarded appellee $758.29 as the balance due under the Texas judgment; $700 for extraordinary expenses incurred for Bruce before his majority; and $1,013.95 for such expenses after majority. The judgment also directed appellant to pay to appellee the sum of $125 per month for the future support and maintenance of their son. The appeal challenges the judgment in its entirety, and appellee has cross-appealed from so much thereof as fails to award the full amount claimed as the balance under the Texas judgment. She also complains of the failure of the court to make her an allowance pendente lite. Since we are disposing of the case on its merits, we shall not consider this complaint.

At the outset, we consider two jurisdictional questions which are urged by appellant. It is insisted that since the Texas judgment merely directed that the maintenance payments should continue until further orders of the court it is interlocutory in nature and not such a final judgment as may be enforced in a sister State. It is further urged that the Texas judgment is void, whether final or interlocutory, to the extent that it may be construed as awarding maintenance beyond the sixteenth birthday of the children because it is violative of Article 4639a, Vernon's Annotated Civil Statutes of Texas. That section provides that the court may make an order for periodic payments by the husband for the benefit of children until they have reached the age of sixteen years.

Whatever its prospective effect may be, we do not regard the Texas judgment as interlocutory insofar as it relates to payments which had accrued prior to the filing of this action. The weight of authority supports the conclusion that the

power of a court to alter or modify an award for maintenance, whether existing by statute or under the terms of the judgment itself, operates prospectively and does not extend to installments which have accrued prior to such modification. A leading case on the question is Sistare v. Sistare, 218 U.S. 1, 30 S.Ct. 682, 687, 54 L.Ed. 905, in which a New York judgment was held to be final notwithstanding a statute of that State which provided that the "court may * * * at any time after final judgment, vary or modify such directions." The Supreme Court there said:

"But it is equally certain that nothing in this language expressly gives power to revoke or modify an instalment of alimony which had accrued prior to the making of an application to vary or modify, and every reasonble impliction must be resorted to against the existence of such power, in the absence of clear language manifesting an intention to confer it."

Appellant cites the Texas cases of Youngblood v. Youngblood, Tex.Civ.App., 163 S.W.2d 731, and Grubbs v. Grubbs, Tex.Civ.App., 164 S.W.2d 216, in support of his contention that the Texas judgment is merely interlocutory and enforceable only in the court in which it was rendered. In the Youngblood case, the plaintiff had instituted an action for divorce and support and maintenance of a minor child in the 67th District Court of Texas. Without pursuing her available remedies in that court, she instituted a second action in the 96th District Court of that State, apparently for the purpose of collecting unpaid installments under the judgment of the 67th District Court and seeking to enjoin the defendant from withdrawing a bank account. The Court of Civil Appeals of Texas held that the plaintiff could not enforce the payment of the award made by the 67th District Court in any court of that State except the court which rendered the judgment. It is clear that this case did not involve the finality of the judgment.

In the Grubbs case, the defendant husband was a nonresident, cited by notice served upon him in New Jersey, and no answer was filed in the suit. The trial court granted the wife a divorce and awarded her the custody of a child, but refused to enter judgment requiring the defendant to make periodic payments for the support of the child. The plaintiff appealed from so much of the order as refused to provide for the support of the child by its father. The appellate court sustained this refusal because it had no jurisdiction to make such an order against a nonresident defendant constructively summoned. The opinion contains the following language:

"Furthermore, the entry of such a judgment would be a vain thing. It would not be entitled to full faith and credit by a sister state because it is interlocutory in nature and may be changed from time to time."

We regard the quoted statement as nothing more than dictum. It was not necessary to a determination of the case and referred to a purely imaginary judgment since the lower court had made no award concerning the support of the child. We think the Texas judgment must be accorded full faith and credit by the courts of this State.

It is not necessary for us to determine the extent and power of the Texas court in making an award for the support of the children beyond their sixteenth birthday. Whatever its power may have been, it had jurisdiction of the parties, and if it violated the provisions of the Texas statute on that subject by making an award beyond the period provided by the statute, the judgment was voidable rather than void. In the case of Dix v. Dix, 310 Ky. 818, 222 S.W.2d 839, 842, a judgment of divorce was granted to the wife in 1930 and the defendant was ordered to convey certain real estate to her as an alimony payment, or in the event of his failure to do so, the master commissioner was directed to execute the deed. The master commissioner executed the deed, and it was approved by the court in 1931. In 1946, appellant attacked the judgment as void, relying upon KRS 403.060, providing that no allowance for alimony shall divest the husband of the fee simple title to real estate. This Court in

holding that the judgment, although violating the statute, was merely voidable, said:

"The sole question is whether or not the portion of the judgment in question is void or voidable. The generally accepted rule is. that where the court has jurisdiction of parties and subject matter, the judgment, if erroneous, is voidable, not void. There is no contention that the court did not have jurisdiction of the parties, and since the subject matter was divorce and incidental alimony, the court had jurisdiction in that respect, and if the court misapplied the statute it was an error to be questioned on timely appeal. Judicial error must be corrected seasonably."

In connection with the award made by the Chancellor for the amount in default under the Texas judgment, the appellant insists that the total sums paid by him are equal to or in excess of the payments ordered by that judgment. Appellee insists on the cross-appeal that the total amount in default is actually $1,958.29 and that the lower court erred in failing to award her that sum.

The testimony of the parties concerning this feature of the case is conflicting. According to appellee's testimony, the balance due without including in her computation any period while the children were with their father is $1,958.29. According to appellant's testimony, he has completely satisfied the provisions of the Texas judgment. The appellee was unable to produce any records supporting her testimony as to the amount of payments which she has received and the appellant was unable to produce checks or other records supporting the full amount which he claimed to have paid. The evidence being conflicting and of about equal weight, we do not feel justified in disturbing the finding of the Chancellor in his determination that $758.29 was the balance due appellee under the provisions of the Texas judgment.

Appellant insists that he should be credited upon the judgment with clothing supplied to the children from time to time while they were residing with their mother. The general rule is that where a judgment by its terms provides for the payment of money it can be satisfied only in money unless the owner of the judgment chooses to accept property or some other thing of value. In order that the acceptance of something other than money may operate as a satisfaction, there must be a positive and express agreement to accept the substitute for payment or application on the judgment. 49 C.J.S., Judgments, § 552, page 1022. No such agreement was shown here.

Appellant next contends that the award of $700 for extraordinary expenses incurred and paid by appellee on account of Bruce's illness before his twenty-first birthday was necessarily included within the award made by the Texas court and no additional allowance should have been made. It is clearly established that on account of Bruce's illness more than ordinary support was required for him. The award made by the Texas court does not necessarily represent the full measure of the father's liability for support of his children. In the event illness or some other emergency should require it, a father is liable for necessaries furnished a minor child regardless of the fact that a specific award has been previously made.

Finally, we consider the question of the award made by the lower court for the support and maintenance of Bruce after he reached his majority. The early opinions of this Court indicated the rule to be that a parent had no legal obligation in any event to support his child after it became twenty-one years of age. Commonwealth v. Willis, Ex'r, 7 Ky.Law Rep. 677; Central Kentucky Asylum for Insane v. Knighton, 113 Ky. 156, 67 S.W. 366. The rule was relaxed in Crain v. Mallone, 130 Ky. 125, 113 S.W. 67, 22 L.R.A.,N.S., 1165, and Breuer v. Dowden, 207 Ky. 12, 268 S.W. 541, 42 A.L.R. 146, where it was recognized that a father may become liable for the support of an adult child if the child is so weak in mind or body as to be incapable to care for himself and after becoming twenty-one years of age remains unmarried and living in the father's home. Appellant insists that under the rule announced in the latter cases

·the father is liable for the support of an adult child only in the event the child is a member of the father's household upon and after attaining majority.

Although there is some authority, including the Crain and Breuer cases, which indicates that liability for the support of an adult dependent child is qualified by the requirement that the child must be a member of the father's household, the decided weight of authority supports the proposition that residence in the father's home is not necessary to the application of the rule. Anderson v. Anderson, 124 Cal. 48, 56 P. 630, 57 P. 81, 71 Am.St.Rep. 17; Younger v. Younger, 112 Cal.App. 445, 296 P. 1104; Zakrocki v. Zakrocki, 115 Ind.App. 556, 60 N.E.2d 745; Prosser v. Prosser, 159 Kan. 651, 157 P.2d 544; Wells v. Wells; 227 N.C. 614, 44 S.E.2d 31, 1 A.L.R.2d 905.

KRS 405.020(2), which is an amendment adopted by the 1952 General Assembly, places primary liability for the support of wholly dependent adult children on the father. Although the statute cannot retroactively support the award to appellee in this case, we think, without reference to the statute, the father is liable for the support of a dependent adult child regardless of whether or not the child may be a member of the household.

The testimony establishes beyond question that Bruce, on account of his physical and mental condition, is unable to support himself. The appellee expended for his support, medical care, and medicines since he became twenty-one years of age the amount awarded her by the Chancellor. During most of the period over which these expenses were incurred and paid, the appellee had no income and was financially unable to assume the burden of his support. We think the Chancellor properly awarded appellee the $1,013.95 as the amount expended by her after Bruce became twenty-one years of age.

Turning now to the question of future support, we observe that the appellant has expressed both a willingness and desire to take Bruce into his home and provide necessary support, maintenance, and medical attention. There is nothing in the record to indicate that this unfortunate young man cannot be cared for as effectively in his father's home as in the home of his mother. Since the father is primarily liable for his support, he should be given the opportunity to provide the support and care in his own home unless there is some impelling reason which would make that arrangement impracticable.

We think substantial justice will be accomplished by permitting appellant to support Bruce in his own home rather than requiring periodic payments to appellee for that purpose. Therefore, no award for future support should be made against appellant so long as he is willing and able to support his son in his own home. If in the future conditions should arise which make this arrangement impracticable or unjust, the court will have jurisdiction to make any changes which circumstances may require.

The judgment is affirmed on the original and cross-appeal insofar as it relates to all matters except the future support of the adult child and to that extent it is reversed with directions to require no payments for future support so long as the appellant is able and willing to provide maintenance and support in his own home.