## Ex Parte Dean Padfield

No. A-4955. Decided February 9, 1955.
Rehearing overruled March 30, 1955.
(276 S.W. 2d Series 247)

*Doss Hardin,* of Fort Worth, *Small, Small & Craig* and *C. C. Small,* all of Austin, for relator.

*Francis G. Culhane,* of San Angelo, *Richard P. Martin* and *Alexander & Martin,* of Fort Worth, for respondent Vada Padfield McIntosh.

MR. JUSTICE CULVER delivered the opinion of the Court.

Relator, Padfield, seeks to be relieved from the penalties of an order of the Wise County District Court adjudging him in contempt for failure to pay child support as ordered.

Padfield was granted a decree of divorce nisi in the State of Colorado on the 21st day of April, 1950. The decree by its terms was to become final six months thereafter. It ordered Padfield to pay the sum of $100.00 monthly for the support of an adopted child. He complied with this order, according to his

testimony, for a period of six months and has made no payment since that time.

The former wife petitioned the district court of the county in which relator resides to have him adjudged in contempt for failure to comply with the Colorado court's support order. Upon a hearing the court found among other things that (a) Padfield had never filed an action in the Colorado District Court asking for reduction of child support payments, (b) the divorce decree became final October 21, 1950, (c) both parties had remarried, (d) Padfield is $3,400.00 in arrears and is able to pay the amount for which he is in a default.

The Court thereupon adjudged him in contempt and ordered him to be committed to jail until he paid the $3,400.00 due and owing and $116.55 court costs.

Relator contends that the judgment cannot stand and he should be discharged from the confinement imposed for the following reasons:

(1) The Colorado decree was interlocutory and not shown by proof to be a final, valid and subsisting judgment.

(2) That the Colorado judgment was not shown to have been, (a) such a judgment as the Texas courts could have rendered in the first instance, (b) such a judgment that did not require the performance of acts contrary to our public policy, (c) that all of the jurisdictional facts required by the Texas statutes were not present.

(3) That the uncontroverted evidence conclusively established his inability to perform.

(4) Because it attempts to imprison petitioner for failure to pay appeal costs for which adequate bond has been given.

■ The Colorado decree reads in part as follows:

"It is accordingly ordered, adjudged and decreed by the Court that this Interlocutory Decree is hereby made and entered the day and year first above written according to the foregoing findings of the court and that the bonds of matrimony heretofore and now existing between Plaintiff and Defendant be dissolved and for naught held and that if at the expiration of the period of six (6) months from and after this date this Interlocutory Decree has not been set aside and no motion or application ot

have the same set aside is pending and undisposed of, it shall become the permanent and final decree of this Court and the parties hereto shall be finally and fully divorced.

"\* \* \* \*

"It is further ordered that the Plaintiff pay to the Defendant by way of support money for the minor child, Judy Padfield, the sum of One Hundred ($100.00) Dollars per month commencing with the date hereof, and continuing monthly thereafter until the further order of the Court."

This judgment duly authenticated was offered in evidence. There is no documentary proof to the effect that no motions or applications to modify, set aside or appeal from the Colorado judgment were filed and acted upon. We think, however, the circumstances shown supported the finding that this decree became final six months after its entry. The relator testified that he paid child support for the full six months of the interlocutory period. He satisfied the terms of the decree in making the division of property ordered by the court and both he and his wife shortly thereafter remarried. The inference most surely can be indulged that the relator did not apply for nor secure a modification of the child support order.

In support of his point he cites and relies upon Fox Vliet Drug Co. v. Arnold, Texas Civ. App., 84 S.W. 2d 1012, error dismissed, and Ogg v. Ogg, Texas Civ. App., 165 S.W. 912. In Fox Vliet an authenticated copy of an Oklahoma judgment was excluded by the trial court on the ground that same was not proved up as a valid and final judgment. No other proof having been offered, judgment denying recovery was affirmed by the Beaumont Courts briefly saying that presumption of its finality and regularity will not be indulged.

The two cases relied on by the Beaumont Court in its opinion are American National Bank of Oklahoma v. Garland, 235 S.W. 562, and Walker v. Garland, Texas Com. App., 235 S.W. 1078. In the first of these two cases the judgment showed on its face that it was interlocutory and not final for that the cause had been continued as to one defendant and recovery allowed against the other two. In the latter, an Oklahoma judgment foreclosing a mortgage, the court held, could not be sued on in Texas until the proceeds of the mortgaged property had been applied and the balance due determined.

■ In Ogg, plaintiff sought to recover past due installments of

alimony allowed her in a New York divorce judgment. The court citing Sistare v. Sistare, 218 U.S. 1, 30 Sup. Ct. 682, 54 L. Ed. 905, held that in the absence of proof of the law of New York the judgment was not shown to be final. For thus only, could it be shown that the right of modification reserved in the New York court was one which did not extend to overdue and unsatisfied payments, but only to those which might occur in the future. The court further observed that inasmuch as permanent alimony is unknown in Texas the general rule, that the laws of another state are assumed to be the same as the laws of the forum in the absence of proof to the contrary, could not be invoked in aid of petitioner. In this state a decree of divorce including child support becomes final and binding. The child support is certain and fixed until changed by the court after application, a hearing and proof of changed conditions.

Even if the judgment does not recite in so many words that the child support payment is to be made "until further order of the court" this is necessarily implied because the statute provides:

"* * * Said Court shall have power and authority to alter or change such judgments, or suspend the same, as the facts and circumstances and justice may require, upon notice to such parents as above provided for, or with his or her consent." Art. 4639a.

This provision does not make the original decree any the less final nor invest the court with any retroactive authority.

In McAfee v. McAfee, Texas Civ. App., 255 S.W. 2d 185, it was shown that the original decree of divorce ordered respondent to pay to the petitioner the sum of $160.00 monthly for the support of a child " 'or until the further ordered by the court and subject to the orders of this court'." Subsequently, on motion the court reduced the child support order to $100.00 per month. We held that this modification was such a final judgment as to be appealable.

■ The second point is based upon the failure of the record either in the Colorado decree or on the trial of the contempt proceedings to show affirmatively that the child was under the age of sixteen, both at the time of the rendition of the divorce decree and at the time of the contempt proceedings. Relator correctly asserts that the courts of Texas under Art. 4639a (later amended) during the time in question had no authority

to enter a support order for a child over the age of sixteen. Hardin v. Hardin, Texas Civ. App., 247 S.W. 2d 614, and that likewise no parent could be held in contempt for failure to support a child beyond that statutory age. Mobley v. Mobley, Texas Civ. App., 221 S.W. 2d 565. It is argued that the child might well have been over sixteen at the time the Colorado court ordered support, and if not she could have arrived at the age of sixteen some time thereafter and prior to the time it was sought to punish relator for failure to make the payments in 1953, and thus the decree would be contrary to the public policy of this state. While it is true that nowhere is there to be found any testimony setting out the age of this child, it seems to be established by the relator's tacit admission that she was not sixteen at the time of the Wise County hearing. In this answer the defendant prays that, should the court find that it has jurisdiction to try this cause and should it further find to its satisfaction that a valid judgment was entered against this defendant in the state of Colorado, the court should fix an amount of child support which would be within the province of his ability to pay, and alleges, "at this time the maximum amount which he could pay would be $25.00 per month."

Acting upon this application the court reduced the child support, payment to $50.00 monthly, effective the 1st day of September, 1953. We think, therefore, it is unavailing for him to complain of the lack of evidence on this score. The point is overruled.

■ The question as to proof of inability to pay gives considerable concern, but as said in Ex Parte Helms, 152 Texas 480, 259 S.W. 2d 184, under well established principles and a long line of authorities it is not within the province of this court to pass upon the weight or sufficiency of the evidence. Our jurisdiction is limited to saying whether or not there is such a total lack of substance in the proof offered as to render the judgment void. After a thorough review, in our opinion, it cannot be said that the evidence wholly fails to support the trial court in his finding of fact that the relator was able to perform.

The only witness who testified on this point was the relator himself. His testimony is somewhat confusing and in some respects contradictory. It may be summarized as follows:

He owns a ranch in Wise County of 682 acres which he purchased shortly after coming to Texas in the fall of 1950 for an undisclosed consideration. There is no testimony as to the pres-

ent value. The land is now mortgaged in the amount of $43,-500.00 with interest in the amount of $2,000.00 due November 1, 1953. At one point when asked about the consideration he said: "I didn't pay any cash. I had some notes that I traded, about $40,000.00 in notes." He was positive that he did not pay any cash. Later when shown the deed he admitted that there was a $7,000.00 cash payment, the assumption of a note in the sum of $22,950.00 and the execution of two vendor's lien notes in the sum of $2,369.50 each. Again he said that the money paid down on the ranch was borrowed from a bank in Colorado and $1,000.00 from his mother. Again, counsel evidently referring to the $40,000.00 notes, asked, "Now, are those the notes that you sold, a part of the money you put in the ranch down here?" Answer "They are the money." He has had three crop failures, the first year a flood and the next two the drought. He has not been able to pay expenses and has had to borrow to make his payments on the mortgage. It has been refinanced with another company. In addition to the land he owns 170 head of cattle, mortgaged to the bank for $12,800.00, the mortgage also secured by two tractors and his automobile. The cattle at the present time are worth no more than the amount of the mortgage. He has now not over $50.00 in the bank.

The separation agreement between the parties executed in 1949 makes it appear that at that time the relator was fairly well to do. By the terms of this agreement he paid over to the wife approximately $33,000.00 in cash and property. He owned two tracts of land in Colorado of unknown acreage. He had retained one-eighth interest in the minerals in a 328 acre tract in Kansas. The agreement also refers to his ownership at that time of 246 head of cattle, $2,500.00 worth of hay, automobile, truck, farm machinery and other items. He testified that he sold his place in Colorado for $50,000.00 and he has an "idea" that he owed about $25,000.00 to two men in Colorado. While his testimony that he has not made expenses for the last three years is convincing enough, it does not warrant a finding that he does have a substantial equity in his ranch at this time.

To be sure one cannot be imprisoned where he is involuntarily unable to perform. Ex Parte Steinhauser, 133 Texas Crim. Rep., 166, 109 S.W. 2d 485; Allen v. Woodward, 111 Texas 457, 239 S.W. 602, 22 A.L.R. 1253; Ex Parte Helms, supra, and no court would knowingly inflict the penalties in such a situation. On the other hand, relator is morally and legally obligated to support his own child. He evidently has made little effort to do so since his last payment in October of 1950. The burden is

upon him to show that inability. We do not believe he has discharged the burden imposed upon him by law.

■ Included in the amount of $116.55 costs which petitioner is ordered to pay are the items of $35.00 for preparation of transcript and court reporter's fee of $60.00 for transcribing the testimony.

While we held in Ex Parte Helms, 152 Texas 48, 259 S.W. 2d 184, that the collection of an attorney's fee charged as costs as well as other costs in the proceedings could be enforced by contempt order, nevertheless we are of the opinion that this right should not be extended to the collection of costs incident to petitioner's application to appellate courts for relief. He presented and obtained approval of an appeal bond in the sum of $400.00, conditioned that he would prosecute an appeal to the Court of Civil Appeals. That appeal has heretofore been dismissed.[1] The statement of facts and transcript were prepared in connection with that appeal. The costs presumably can be collected, therefore, by recourse to this bond. Under the circumstances, we therefore hold that the contempt order should be modified to exclude the requirement that he pay the costs. With this modification the writ is denied and relator is remanded to custody of the sheriff of Wise County and to be confined under order of the district court.

Opinion delivered February 9, 1955.

Rehearing overruled March 30, 1955.

---

1.—Padfield v. McIntosh, 267 S.W. 2d 224.