## EX PARTE BYRON G. KOLLENBORN

No. A-4873. Decided March 9, 1955.
(276 S.W. 2d Series 251)

*James L. Mitchell,* of Dallas, for relator.

*Dee Brown Walker,* of Dallas, for respondent, Kay Kollenborn.

MR. JUSTICE WALKER delivered the opinion of the Court.

This is an original habeas corpus proceeding. The brief of the relator, Byron G. Kollenborn, presents the one point that the evidence shows inability to comply with the order sought to be enforced.

Relator filed in the Juvenile Court of Dallas County suit against his wife, Kay Kollenborn, for divorce and for custody of two children born to their marriage. On November 26, 1953, the court heard and overruled relator's motion for temporary custody of the children, and directed relator to pay the wife temporary alimony of $400.00 per month. The relator made payments of $400.00 each in December and January. The trial on the merits resulted in a judgment dated January 25, 1954,

denying relator a divorce, granting a divorce to the wife on her cross-action ,awarding custody of the children to the wife and ordering relator to pay $150.00 per month for the support of the children. The judgment also directed the relator, in the event of an appeal, to pay to the wife as temporary child support and temporary alimony pending the final disposition of the case, $400.00 per month beginning February 1, 1954. The relator filed a supersedeas bond and perfected his appeal to the Court of Civil Appeals at Dallas, where the main case was pending on appeal at all times material to the proceedings mentioned below.

On May 11, 1954, after a hearing in the trial court, the relator was adjudged in contempt and ordered confined until he purged himself by payment of $400.00. Application was made to this court for a writ of habeas corpus, and upon final determination relator was remanded to custody of the sheriff. Ex Parte Kollenborn, No. A-4678, 153 Texas 350, 269 S.W. 2d 339. Thereafter and prior to the hearing and order which are now under attack, the relator paid the $400.00 required by the previous contempt order and two additional payments of $150.00 each.

On July 16, 1954, the wife filed in the trial court her motion to hold relator in contempt for failure to pay the $1,700.00 balance remaining unpaid for the months of February through July. In the same motion it was alleged that relator is employed by Westinghouse Electric Corporation at a salary of $850.00 per month and that Westinghouse should be required during the pendency of the case to withhold $400.00 each month from relator's salary and either pay such amount to the Juvenile Court, or hold the same in trust, for the wife. Notice to show cause was issued to relator and to Westinghouse, and the latter withheld $400.00 from the monthly salary payable to relator on August 1. On August 13, 1954, the trial court heard the evidence and entered its order adjudging the relator in contempt, assessing a fine of $100.00 and confinement in jail for seventy-two hours, and directing that he thereafter be confined until he has purged himself of contempt by payment of $1,000.00 for the support of his wife and children. The wife's motion as it related to Westinghouse was taken under advisement by the trial judge, who stated that if relator would agree to release to his wife and children the $400.00 withheld by Westinghouse, he would receive credit therefor. Writ of attachment was issued and relator was taken into custody. He thereupon applied to this court for a writ of habeas corpus, and we ordered him released on bond

pending a determination of the validity of the order of commitment.

The testimony of the relator and a stub from his monthly pay check constitute the evidence offered at the hearing with respect to his ability to make the payments required by the judgment and the contempt order. The relator testified that: he is employed by Westinghouse at a gross salary of $850.00 per month; Westinghouse normally withholds from his monthly check a total of $194.00, of which $58.00 is for the purchase of Westinghouse stock; an additional $400.00 was withheld from his August 1 check; his present family consists of himself, his housekeeper and two children by a former marriage; his fixed monthly expenses, which he itemized as set out below, aggregate $536.90 exclusive of the payments required for temporary alimony and child support; he has $27.00 in cash and $94.00 in the bank; he owes current bills aggregating $239.00, which he is unable to pay because the $400.00 was withheld by Westinghouse; he owes $3,150.00 to banks of which $800.00 was borrowed to make payments ordered by the court in this case, and $800.00 of such indebtedness is due the month following the hearing; he has borrowed money on the policy of insurance which was awarded to him by the divorce decree; he has tried and has been unable to borrow more money and has not been able to liquidate anything; he occasionally has some income from the Army for attending meetings, but the amount is not definite and he has probably received $300.00 from that source; he has no resources except his monthly salary, the community property and the $121.00 on hand; he has no way of paying the temporary alimony and child support except out of current income. The fixed monthly expenses were itemized by relator as follows: insurance premiums $73.20; ad valorem taxes $16.00; church contributions $25.00; orthodontist for work on daughter's teeth $20.00; medical bills $25.00; house payment $57.00; groceries $100.00; housekeeper $80.00; music and dancing lessons for children $9.50; monthly installments on encyclopedia $5.00; light, gas and water $28.00; telephone $8.20; laundry and cleaning $14.00; clothing $50.00; and dues to club which he "thinks" is a necessary business expense $26.00.

■ ■ While involuntary inability to comply with the court's order is a good defense in a contempt action, an original habeas corpus proceeding in this court is a collateral attack on the contempt decree. We have no jurisdiction to weigh the evidence to edtermine whether it preponderates against the judgment. Ex Parte Helms, 152 Texas 480, 259 S.W. 2d 184. We do, how-

ever, treat the contempt order as void if the evidence offered at the hearing conclusively establishes involuntary inability to perform. Ex Parte White, 154 Texas 126, 274 S.W. 2d 542. Where the alleged contempt consists of failure to make support payments previously ordered, the burden is upon the respondent to show that he is unable to perform. Ex Parte Padfield, 154 Texas 253, 276 S.W. 2d 247. If he was able to pay one or more of the delinquent installments as they accrued but is at the time of the hearing unable to pay the arrearages, he is nevertheless subject to the punishment authorized by Art. 1911, Texas Rev. Civ. Stat. 1925. Ex Parte De Wees, 146 Texas 564, 210 S.W. 2d 145.

If all the expenditures detailed by relator were necessary, approximately $120.00 of each monthly pay check was available to make the support payments. The relator's testimony as to his monthly expenditures is not corroborated, and is not entirely free from doubt in certain respects. His statement that they constitute fixed monthly expenses is a conclusion, and we are unable to find in the record factual support for this conclusion as to some of the items. The record does not show (1) that the expense of the music and dancing lessons and club dues could not have been eliminated, (2) that it was necessary for relator to continue his normal expenditures for clothing, (3) that he could not have arranged to obtain the $58.00 which was withheld from his salary each month for the purchase of stock, (4) that other items of expense could not have been eliminated, reduced or deferred.

■ While the relator had the right and duty to pay essential expenses for himself and the two children living with him, he was also under the duty to comply with the support order. If necessary to the discharge of the latter obligation, it was incumbent upon him to reduce to the absolute minimum the expenditures for himself and the children in his home. That he has done this is not conclusively established by his relating how the money was spent each month.

On cross-examination the relator testified, in part, as follows:

"Q. Now, you borrowed, I believe $2,000.00 from the Republic National Bank and pledged your life insurance policies in order to put $2,000.00 collateral with the surety on your supersedeas bond, is that right?

"A. I don't know what I did with it. I turned it over to my attorney to handle.

"Q. For that purpose, is that right?

"A. I turned it to my attorney for the purpose of complying with the court order, yes.

"Q. You don't know what Mr. Mitchell did with the $2,000.00?

"A. I have every confidence that he complied with the court order with it."

In response to other questions, he stated that he had paid his attorney some amount on the expenses, but nothing on attorney's fees, in the case. Other than the above quoted testimony, the record is silent as to what, if anything, was done by the attorney with the $2,000.00 turned over to him "for the purpose of complying with the court order."

■ Relator has received from the Army some $300.00 in addition to his salary from Westinghouse. The contempt decree requires him to pay $1,000.00 rather than the entire $1,700.00 in arrears. This $1,000.00 plus the $700.00 already paid average approximately $283.00 per month for the six-month period. After a careful examination of all the evidence, we cannot say that it conclusively appears that relator was unable to pay such amounts as they accrued or was not at the time of the hearing able to pay the $1,000.00 required by the contempt order.

It is ordered that relator be remanded to the Sheriff of Dallas County to be by him confined under the order of the Juvenile Court, and that relator pay all costs of this proceeding.

Opinion delivered March 9, 1955.