Dorothy Ann CATLETT, Plaintiff in Error,

v.

John Cross CATLETT, Defendant in Error.

No. 40887.

Supreme Court of Oklahoma.

March 22, 1966.

Jackson, V. C. J., and Davison, Irwin and Hodges, JJ., dissented.

Franklin, Harmon & Satterfield, Oklahoma City, for plaintiff in error.

L. E. Stringer, James C. Gibbens, and Crowe, Boxley, Dunlevy, Thweatt Swinford & Johnson, Oklahoma City, for defendant in error.

HALLEY, Chief Justice.

The parties will be referred to herein as they appeared in the trial court.

On November 16, 1961, plaintiff Dorothy Ann Catlett, filed her petition in District Court of Oklahoma County against defendant, John Cross Catlett, to recover judgment for delinquent child support payments directed in a divorce decree entered in the Juvenile Court of Dallas County, Texas on September 7, 1955. A copy of the decree is attached to the petition of the plaintiff. In the decree plaintiff was awarded the custody of Kathleen Delia Catlett, age 9, the child of the plaintiff and defendant, and the defendant was ordered to pay the sum of $60.00 per week toward the support and maintenance of said minor child, the first payment to be made on or before August 13, 1955, and a like sum of $60.00 every Saturday thereafter until the child reached the age of eighteen years.

The defendant paid three or four of the weekly $60.00 payments. He then discussed the matter by telephone with some one connected with the child support office in Dallas, Texas. He testified that the party informed him that if he paid $150.00 a month, there would be no problem as long as "it was paid through the court" and not direct to plaintiff. The records of the Dallas County Child Support Department reflect that defendant has made these $150.00 payments each month up to the date of trial.

A jury was waived by both parties. The case was tried before the District Judge on July 10, 1963 and taken under advisement. On October 18, 1963 the trial court entered a judgment finding "generally in favor of the defendant and against the plaintiff". No specific findings of fact and conclusions of law were entered. Timely motion for new trial was filed and overruled. Plaintiff prosecutes this appeal. Parties will be referred to as they appear in the trial court. The cause is regularly before this Court for hearing and disposition on its merits.

This Court has held that full faith and credit must be accorded to the decree of the

Texas court. Clark v. Clark, Okl., 380 P.2d 241; Clester v. Heidt's Estate, Okl., 353 P.2d 699. Defendant requests that we re-examine this question giving consideration to the Texas statutes and several Texas decisions. Defendant cites Article 4639–a of the Texas Civil Statutes, Vernon's Civil Stat., and Texas cases as follows: Blunk v. Ivens, Tex.Civ.App., 330 S.W.2d 247; Johns v. Johns, Tex.Civ.App., 172 S.W.2d 770; Ex Parte Roberts, 139 Tex. 644, 165 S.W.2d 83; and Grubbs v. Grubbs, Tex. Civ.App., 164 S.W.2d 216.

Article 4639–a of the Texas Civil Statutes and the cases cited outline the procedure to be followed in modifying a divorce decree because of change of conditions. The question of the full faith and credit to be accorded to a divorce decree of a foreign state is not involved.

These sames cases with the exception of Blunk v. Ivens, supra, were presented to the Oklahoma Court in Clark v. Clark, supra, and held to be inapplicable.

The Texas Court in several cases holds that the provisions of a divorce decree entered in a foreign state are entitled to full faith and credit in the Texas courts as to all past due payments for child support.

In Gard v. Gard, 150 Tex. 347, 241 S.W.2d 618, the Supreme Court of Texas, construing an Idaho divorce decree, held that matured payments for child support became "absolute, vested and protected by the full faith and credit clause of the federal constitution".

In Stout v. Stout, Tex.Civ.App., 214 S.W.2d 891, error refused, the Court held that past due installments on a Louisiana judgment for alimony and child support were final and entitled to full faith and credit in a Texas action on the judgment, notwithstanding the Louisiana statute authorized the annulment or amendment of judgments for alimony.

In Caples v. Caples (CCA 5), 47 F.2d 225, which originated in the Western District of Texas, the Circuit Court held that the accrued payments on an alimony judgment of a California court were final and entitled to full faith and credit by the Texas Court in an action to enforce the California judgment.

In Texas allowances for child support are binding and final until changed by the court. In the case of Ex Parte Padfield, 154 Tex. 253, 276 S.W.2d 247, the Supreme Court of Texas said:

"In this state a decree of divorce including child support becomes final and binding. The child support is certain and fixed until changed by the court after application, a hearing and proof of changed conditions."

In the instant case the defendant has at no time filed an application in the Texas Court seeking to modify or change the payments for child support.

This troublesome question has been before the Oklahoma Court for more than fifty years. In 1910 in Bleuer v. Bleuer, 27 Okl. 25, 110 P. 736, this Court held that a divorce decree entered in the State of Illinois providing for the payment of child support in monthly installments subject to modification, lacked finality and would not be accorded full faith and credit by the Oklahoma courts.

At the time Bleuer v. Bleuer, supra, was decided, the Court did not have before it the landmark decision of the Supreme Court of the United States in Sistare v. Sistare, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905, 28 L.R.A.,N.S., 1068, wherein the Court held the courts of Connecticut should give full faith and credit to a New York divorce decree in enforcing the payment of past due and unpaid installments of alimony "although the modes of procedure to enforce the collection may not be the same in both states".

In 1911, this Court in Campbell v. Campbell, 28 Okl. 838, 115 P. 1111, declined to follow Bleuer v. Bleuer, supra, and approved the case of Sistare v. Sistare, supra. The Court held that the Oklahoma courts should give full faith and credit to a divorce decree entered in Missouri in enforcing the payment of "overdue and unpaid installments" of alimony.

. In Hastings v. Hastings, Okl., 274 P.2d 540, decided in 1954, this Court said:

"A Nevada judgment for divorce and for continuing monthly payments to wife from husband, valid in Nevada, is here entitled to full faith and credit as a final judgment for the monthly sums which have accrued and are due and payable thereunder."

This question was before this Court in 1960 in Clester v. Heidt's Estate, Okl., 353 P.2d 699, involving a suit to enforce the payment of unpaid child support benefits provided for in an Indiana divorce decree and again in 1963 in Clark v. Clark, Okl., 380 P.2d 241, a suit brought to recover past due payments for child support provided for in a Texas divorce decree. In each of these cases this Court said:

"A foreign divorce decree providing for periodical payments of child support is entitled to full faith and credit in this State as to matured, unpaid child support installments."

Sistare v. Sistare, supra, has been approved by the courts of the last resort of many states. A check by the use of "Shepard's Citations" reflects its approval by more than a dozen jurisdictions.

Among the jurisdictions citing with approval the case of Sistare v. Sistare, supra, is the State of Kentucky. The facts in the Kentucky case of Williams v. West, Ky., 258 S.W.2d 468, are almost identical with those presented in the present case. Plaintiff sued in Kentucky to enforce the payment of delinquent child support payments allowed in a Texas divorce decree. The Court held that the Texas decree was not interlocutory as to past due payments and should be accorded full faith and credit.

■ This Court, in an unbroken line of decisions arising over a period of more than fifty years, has held that the Oklahoma courts must accord full faith and credit to the provisions of a divorce decree entered in a foreign state as to matured, unpaid child support installments. Our decisions appear to be in accord with the weight of authority as reflected in the decisions of sister states. We see no good reason to depart from our rule declared in our prior decisions and none has been pointed out to us. We adhere to our previous rulings.

■ The rights of the parties under the provisions of the Texas decree are to be determined by the law of Oklahoma. Clester v. Heidt's Estate, supra; Leonard v. Kleitz, 155 Kan. 626, 127 P.2d 421.

■ Defendant in his pleadings and evidence contends that the decree of the Texas court should be modified. He argues that the plaintiff has been able to support the minor child for many years on the $150 per month which he has paid her regularly and has therefore acquiesced in the reduction of the payments. In the meantime he has remarried and his earnings are required to support his new family and other dependents. The argument of the defendant is plausible but is not available to him in these proceedings. This Court is firmly committed to the rule that "modification of an order for child support must be prospective and cannot be retroactive". Clark v. Clark, supra; Clester v. Heidt's Estate, supra; Reynolds v. Reynolds, 192 Okl. 564, 137 P.2d 914; Sango v. Sango, 121 Okl. 283, 249 P. 925.

The Oklahoma rule is in accord with the decisions of other jurisdictions. Griffin v. Griffin, 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635; Barber v. Barber, 323 U.S. 77, 65 S.Ct. 137, 89 L.Ed. 82; Trunkey v. Johnson, 154 Kan. 725, 121 P.2d 247; Davis v. Davis, 145 Kan. 282, 65 P.2d 562. Many cases supporting the rule are cited in extensive A.L.R. notes: 6 A.L.R.2d 1284–1286; 157 A.L.R. 173–181; 41 A.L.R. 1419–1423.

The Kentucky court in Williams v. West, supra, construing the provisions of a Texas divorce decree involving past due payments for child support said:

"Power of court to alter or modify an award made in divorce action for maintenance, whether existing by statute or under terms of judgment itself, operates prospectively and does not extend to installments which have accrued prior to modification."

The Texas cases cited in the brief of the defendant do not sustain his contention that the Texas courts "have power to modify child support payments retroactively". Clark v. Clark, supra. The Texas cases, Gard v. Gard, supra, and Stout v. Stout, supra, also the federal case, Caples v. Caples, supra, which arose in Texas, hold at least inferentially to the contrary.

In Ex Parte Padfield, 154 Tex. 253, 276 S.W.2d 247, construing Article 4639-a, Texas Civil Statutes, supra, relating to the "power and authority" of the court "to alter or change" provisions of child support decrees, said:

"This provision does not make the original decree any the less final *nor invest the court with any retroactive authority* (Emphasis ours)".

■ The Oklahoma court is without authority to vacate or modify the past due payments for child support allowed in the Texas decree.

■ In 27B C.J.S. Divorce § 381, p. 884, the rule is stated as follows:

"Accrued installments of alimony due under the decree of a foreign court are protected as final judgments under the full faith and credit clause and may not be modified in another state."

In Cogswell v. Cogswell, 178 Or. 417, 167 P.2d 324, the Oregon Court said:

"The unpaid matured installments of alimony awarded by California court in divorce decree are not subject to rescission or modification, and such decree is protected by the full faith and credit clause of the federal Constitution."

■ Defendant contends that recovery of a portion of the support money is barred by the statute of limitations. Plaintiff contends that if the statute of limitations is applicable, the undirected payments of $150 made monthly by the defendant should be applied to the oldest unpaid weekly support obligation outstanding at the time of each payment. We do not agree. Under the terms of the decree defendant was required to make a weekly payment of $60.00 each Saturday. If he failed to pay the entire amount on each Saturday the balance became delinquent at that time and the statute of limitations commenced running. This apparently is a new question for the Oklahoma court but the rule appears to be well settled that where a divorce decree provides for the payment of alimony or support in installments the right to enforce payment accrues on each payment as it matures and the statute of limitations begins to run on each installment from the time fixed for its payment. In the recent case of Richter v. Richter, N.D.1964, 126 N.W.2d 634, the Supreme Court of North Dakota said:

"Where divorce decree provides for payment of alimony installments, right to enforcement accrues on each installment as it matures and statute of limitations begins to run on each installment from time fixed for its payment."

In Simmons v. Simmons, 67 S.D. 145, 290 N.W. 319, it is stated:

"When a judgment is rendered, payable in installments, the statute of limitations begins to run against the judgment from the time fixed for the payment of each installment for the part then payable."

In Cogswell v. Cogswell, supra, the Oregon court said:

"Each installment of alimony awarded by California divorce decree should be treated as a judgment, and installments matured more than five years before action in Oregon on such decree were barred by limitation."

Vol. 27B C.J.S. Divorce § 256, p. 88, states the rule as follows:

"Where, however, a judgment provides for payments of alimony in installments, the right to enforcement accrues on each installment as it matures, and the statute of limitations begins to run against the judgment from the time fixed for the payment of each installment for the part then payable."

Additional decisions sustaining the rule are: Leonard v. Kleitz, supra; McGill v.

McGill, 101 Kan. 324, 166 P. 501; Mosher v. Mosher, 25 Wash.2d 778, 172 P.2d 259.

This action is governed by the statute of limitations of Oklahoma rather than the statute of limitations of Texas, the state where the judgment was entered.

In Clester v. Heidt's Estate, supra, we held in action brought in Oklahoma to enforce an alimony judgment entered in the Indiana court that the statute of limitations of Oklahoma controlled and not the statute of limitations of Indiana.

In Leonard v. Kleitz, supra, the Supreme Court of Kansas in a similar situation held the Kansas statute controlled over the Missouri statute.

To the same effect see: Edison v. Lewis, Okl., 325 P.2d 955; 11 Amer.Jur. § 192, p. 507; 53 C.J.S. Limitations of Actions § 27, p. 970; Extensive Note, 36 A.L.R.2d, pp. 567–603.

Defendant in his answer to the second amended petition contends that the applicable statute of limitations is the one year provision of § 4, Section 95, Title 12 O.S.1951, or in the alternative the three year provision of § 2, Section 95, Title 12 O.S.1961. The 1961 amendment to Title 95, became effective on October 27, 1961. This action was commenced on November 16, 1961.

The 1961 amendment to Title 95 became effective on October 27, 1961, and reads as follows:

"Civil actions other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:

"Second. Within three (3) years: An action upon a contract express or implied not in writing; an action upon a liability created by statute other than a forfeiture or penalty, and an action on a foreign judgment."

Art. 5, § 52, Constitution of Oklahoma reads:

"The Legislature shall have no power to revive any right or remedy which may have become barred by lapse of time, or by any statute of this State. After suit has been commenced on any cause of action, the Legislature shall have no power to take away such cause of action, or destroy any existing defense to such suit."

The above constitutional provision was construed by this Court in State v. Ward, 189 Okl. 532, 118 P.2d 216, wherein the facts are as follows: Plaintiff, a Choctaw Indian, filed suit against the State of Oklahoma to recover gross production taxes collected by the state from the production of oil on his allotment during the years 1917 to 1926, inclusive. His suit was authorized by House Joint Resolution No. 51, Chapter 183, S.L. 1933, 68 O.S.St.Ann. § 821, note. In 1925, the Oklahoma Legislature enacted Section 3, Chapter 20, 68 O.S. § 832, effective April 2, 1925, authorizing the State Auditor to refund gross production taxes collected from oil production produced from restricted Indian lands under certain conditions. Ward filed an application for a refund of taxes which was denied but did not seek to enforce his claim in a court action.

This Court held that Ward was not entitled to recover for taxes collected after April 2, 1925 for the reason that "He failed to pursue the remedy until the Statute of Limitations had run against his claim." We further held, "The right of the plaintiff below could not be revived by the Legislature because prohibited by Section 52, Art. 5, of the Constitution". This Court said:

"Where Indian's claim against the state for recovery of taxes which had been illegally levied was barred by limitations, the Legislature was thereafter without power to waive the limitations in view of the constitutional provision that the Legislature shall have no power to revive any right or remedy which may have become barred by lapse of time or by any statute of the state."

In Mires v. Hogan, 79 Okl. 233, 192 P. 811, this Court said:

"Section 52 of article 5 of Williams' Oklahoma Constitution provides that the 'Legislature shall have no power to re-

vive any right or remedy which may have become barred by lapse of time, or by any statute of this state.' Under that section of article 5 of the Constitution, the Legislature cannot remove a completed statutory bar to a cause of action. Smith v. Winston [67 Okl. 133], 170 P. 503; Dolezal v. Bostick, 41 Okl. 743, 139 Pac. 964. See, also, 12 C.J. 980. Thus the privilege to plead the statute of limitations, when it has run and become a bar to a demand arising ex contractu or ex delicto, is a vested right."

■ Prior to October 27, 1961, the date that Title 12 O.S.1961, Sec. 95, Par. 2, became effective, the one year limitation period prescribed by Title 12 O.S.1951, Sec. 95, Par. 4, was controlling. Had plaintiff commenced this action prior to October 27, 1961, her claim for due and unpaid child support would have been governed by the one year limitation period. If the 1961 legislative enactment prescribing a three year limitation could be applicable to the due and unpaid child support payment prior to October 27, 1961, instead of the one year limitation, such enactment would be reviving a remedy to recover due and unpaid child support payment for two years which had become barred. Under the provisions of Art. 5, Sec. 52, of the Constitution, the Legislature had no power to revive any right or remedy which has become barred. It necessarily follows that the one year limitation period provided by Title 12 O.S.1951, Sec. 95, Par. 4, is controlling in the instant action to all due and unpaid child support payment as of October 27, 1961. Therefore, all claims of plaintiff for child support due and unpaid prior to October 27, 1960, are barred by the statute of limitations and plaintiff is not entitled to recover therefor.

■ Plaintiff seeks recovery of $2,000.00 as attorney's fee for the use and benefit of her attorneys. In proceedings to enforce allowances for child support in divorce actions the allowances of attorney's fees to the prevailing party is addressed to the sound discretion of the trial court. Miller v. Miller, Okl., 383 P.2d 873; Watson v.

Watson, 202 Okl. 261, 212 P.2d 667. As this cause must be reversed, we leave this matter for the consideration of the trial court.

The judgment of the trial court is reversed and this cause is remanded to the trial court for new trial.

WILLIAMS, BLACKBIRD, BERRY and LAVENDER, JJ., concur.

JACKSON, V. C. J., and DAVISON, IRWIN and HODGES, JJ., dissent.

JACKSON, Vice Chief Justice (dissenting).

In the trial court, Mrs. Catlett sued for a money judgment for the amount of past due and unpaid child support money which had accrued under a Texas divorce decree entered in 1955. Her action in the Oklahoma court was in form an ordinary suit on a foreign judgment. Foreign judgments (of other states of this country) are enforced in the state of the forum under the full faith and credit clause of the United States Constitution, Art. IV, Sec. 1, and 28 U.S.C.A. § 1738 (formerly 28 U.S.C.A. § 687).

Under that clause, it is well settled that only foreign judgments which are final and binding are enforceable in the forum state. In 50 C.J.S. Judgments § 868, it is said:

"In order that an action may be maintained in one state on a foreign judgment or decree, it is necessary that the judgment or decree should be a valid personal and final adjudication, remaining in full force and virtue in the jurisdiction of its rendition, *and capable of being there enforced by final process.* * * *

"Since, ordinarily, an action cannot be maintained on a valid foreign judgment that defendant do or refrain from doing an act other than the payment of money, the judgment or decree must also be for the payment of money, and must be of a nature to create a definite, absolute, and unconditional *indebtedness* against defendant * * *." (Emphasis supplied.)

The phrase "final process" is defined in Black's Law Dictionary, 3rd Edition, as

"The last process in a suit; that is, writs of execution".

It is equally well settled that under the full faith and credit clause, "* * * no greater effect need be given to any judgment of a court of one state *than is given to it in the state where rendered*"; 30A Am. Jur., Judgment, Sec. 237. The congressional enactment implementing the full faith and credit clause provides that judgments from other states "* * * shall have the same full faith and credit in every court within the United States and its Territories and Possessions *as they have by law or usage in the courts of such State, Territory or Possession from which they are taken*" (emphasis supplied). 28 U.S.C.A. § 1738.

In this case the defendant pleaded and proved the Texas law on the subject of orders for future payments of child support money. Article 4639a, Texas Civil Statutes. For this reason, the rule that in the absence of proof, the law of a foreign jurisdiction is presumed to be the same as the law of the forum, is not applicable. 12 O.S.1961, Secs. 484 and 541, et seq.; Ex parte Langley, Okl.Cr., 325 P.2d 1094; Harrison v. Burton, Okl., 303 P.2d 962. I therefore do not agree that the rights of the parties under the Texas decree are to be determined by Oklahoma law. In Clester v. Heidt's Estate, Okl., 353 P.2d 699, there was no proof as to the foreign law. The opposite is true here.

It therefore becomes necessary to examine the Texas law on the subject of orders for future child support payments. After such an examination, it is my view that (1) Texas orders for future child support payments are not final and binding as they must be to be entitled to full faith and credit, because they may, in effect, be retrospectively modified; and (2) even if they were enforceable under the full faith and credit clause, they should not be given force and effect so far beyond the Texas law as to deprive a party of property without due process of law.

Article 4639a of the Texas Civil Statutes is not merely a statute outlining "procedure to be followed in modifying a divorce decree because of change of conditions". It is the sole statutory basis in Texas of divorce court orders for *future* child support payments (payments to be made after the date of the judgment).

Before the adoption of Article 4639a in 1935, Texas courts were without authority to enter orders for future child support payments. For a review of the law then existing in Texas, see Cunningham v. Cunningham, 120 Tex. 491, 40 S.W.2d 46, 75 A.L.R. 1305. Art. 4639a may be said to be the response of the Texas Legislature to the remarks of the Texas Supreme Court in the Cunningham case. The statute provides in pertinent part:

"Sec. 1 * * * said court may by judgment, order either parent to make periodical payments for the benefit of such child or children, until same have reached the age of eighteen (18) years, or, said court may enter a judgment in a fixed amount for the support of such child or children, and such court shall have full power and authority to enforce said judgments by civil contempt proceedings * * *. Said court shall have power and authority to alter or change such judgments, or suspend the same, as the facts and circumstances and justice may require, upon notice * * *."

Under this statute, the court may do either one of two things: (1) it may order periodical payments for child support to become due in the future until the child reaches the age of 18; or (2) it may enter a judgment for a fixed amount for child support. The court has power "to alter or change such judgments". (Notice that "judgments" is plural and not singular.) The sentence last above quoted gives the court power to alter or change both kinds of judgments (periodical payments or fixed amount). Certainly any change in a "fixed amount" judgment would be a retrospective modification. Since the same authority to "alter or change" is given in both cases, it would seem that a judgment for past due periodical payments for child support would

also be subject to retrospective modification.

The question whether, under Article 4639a, Texas judgments for periodical child support payments are subject to retrospective modification is concededly one for Texas courts to decide, and no case precisely in point has been found. We doubt that any such case will ever be found. The reason lies in the provision of Art. 4639a that the courts of Texas shall have power "to enforce said judgments by civil contempt proceedings". Under this clause, the uniform holding of Texas courts has been to the effect that orders for future child support payments are enforceable *only* by contempt proceedings. Grubbs v. Grubbs, Tex. Civ.App., 164 S.W.2d 216, 217; Youngblood v. Youngblood, Tex.Civ.App., 163 S.W.2d 731; Berg v. Berg, Tex.Civ.App., 232 S.W.2d 783; Freeland v. Freeland, Tex. Civ.App., 313 S.W.2d 943. Texas courts cannot reduce child support arrearages to lump sum judgment, Burger v. Burger, 156 Tex. 584, 298 S.W.2d 119; they cannot be enforced by garnishment or execution, McDonald v. Mercantile National Bank, Tex. Civ.App., 162 S.W.2d 991; Clay v. Siercovich, Tex.Civ.App., 388 S.W.2d 25; they do not create debts, Freeland v. Freeland, supra; and they cannot be enforced against the estate of the divorced husband after his death, Clay v. Siercovich, supra.

In a word, since in Texas no lump sum judgment for child support arrearages may be obtained, and no debt is created, no practical situation can arise in which the Texas court is called upon to retrospectively modify a judgment for past due periodical payments for child support; the only remedy for the petitioner lies in the contempt proceedings authorized by Art. 4639a.

Ordinarily, in the 16 or 17 states which permit retrospective modification of child support orders, the question arises in connection with an effort to reduce child support arrearages to a lump sum judgment. See cases cited in annotation beginning at 6 A.L.R.2d 1277. Since in Texas no lump sum judgment for such arrearages may be

obtained in any case, Texas courts apparently have dealt with this question only in an abstract way. In Ex Parte Padfield, 154 Tex. 253, 276 S.W.2d 247, the court said that Art. 4639a does not " * * * invest the court with any retroactive authority". That case was a habeas corpus proceeding brought by Padfield, who had been adjudged in contempt of court (in Texas) for failure to make child support payments ordered in a *Colorado* divorce decree. No effort to reduce child support arrearages to a lump sum judgment was involved, and no prayer for the retrospective modification of a Texas child support order was before the court. I believe the quoted statement from Ex Parte Padfield is mere dictum, and not sufficient, under the rule of stare decisis, to constitute a determination of this question.

It may be noted, however, that substantially the same relief (retrospective modification of a child support order) is always available under proper circumstances in the course of contempt proceedings for the enforcement of the order. In Texas, "involuntary inability to pay" is a good defense in a civil contempt action. Ex Parte Steinhauser, 133 Tex.Cr.R. 166, 109 S.W.2d 485; Ex Parte Helms, 152 Tex. 480, 259 S.W.2d 184; Ex Parte Kollenborn, 154 Tex. 223, 276 S.W.2d 251. In the last cited case, for example, the former husband, who was in arrears to the extent of $1700 in his child support payments, was ordered confined until he purged himself of contempt by the payment of $1000 to the wife. In practical effect, *since no other remedy was open to the wife*, the husband had the benefit of a $700 retrospective modification of the child support order.

Gard v. Gard, 150 Tex. 347, 241 S.W.2d 618; Stout v. Stout, Tex.Civ.App., 214 S.W.2d 891; and Caples v. Caples (CCA 5), 47 F.2d 225; are not helpful in the case now before us. In those cases, child support judgments from other states were dealt with in courts in Texas, and they are authority only for the proposition that child support orders from Idaho, Louisiana and California courts, respectively, are entitled

to full faith and credit, and will be enforced, in Texas. In this connection, see Bowles v. Bowles, Tex.Civ.App., 251 S.W.2d 774, in which the Texas court refused to enforce the alimony provisions of a Michigan divorce decree for the reason that under Michigan law the past due payments were subject to retrospective modification.

Sistare v. Sistare, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905, 28 L.R.A.,N.S., 1068, 20 Ann.Cas. 1061, is not authority for the proposition that *all* foreign child support decrees are enforceable in the forum state under the full faith and credit clause. In that case, the U. S. Supreme Court was in effect invited to overrule either one of two of its prior decisions (Barber v. Barber, 21 How. 582, 16 L.Ed. 226, and Lynde v. Lynde, 181 U.S. 183, 187, 21 S.Ct. 555, 45 L.Ed. 810, 814) which were allegedly in conflict. In Barber, the Supreme Court had ordered the enforcement, in Wisconsin, under the full faith and credit clause, of past due alimony payments which had accrued under a New York decree; and in Lynde, it had *refused* to order the enforcement in New York of past due alimony payments which had accrued under a New Jersey decree. (In both cases, the "alimony" included child support money.) In Sistare, the Supreme Court reviewed the facts in the two prior cases and pointed out that in Barber, the New York decree was subject to prospective modification only, while in the Lynde case, the enforcement of the New Jersey decree was "subject to the discretion of the court of chancery of New Jersey". The Supreme Court found no conflict between the two prior cases and refused to overrule either one, and stated the true rule to be:

" * * * First, that, generally speaking, where a decree is rendered for alimony and is made payable in future instalments, the right to such instalments becomes absolute and vested upon becoming due, and is therefore protected by the full faith and credit clause * * *. Second, that this general rule, however, does not obtain where, by the law of the state in which a judgment for future alimony is rendered, the right to demand and receive such future alimony is discretionary with the court which rendered the decree, to such an extent that no absolute or vested right attaches to receive the instalments ordered by the decree to be paid * * *."

The Court then re-examined the New York law as it existed when the New York decree in the Sistare case was rendered, concluded that the New York decree was subject to prospective modification only with respect to alimony payments, and in effect ordered its enforcement in Connecticut, the state from which the appeal in the Sistare case came. It may be noted in passing that New York courts have refused to follow the U. S. Supreme Court's construction of the New York statutes in the Sistare case. See annotation at 6 A.L.R.2d 1289, and the interesting editorial comment.

We have previously referred to the language from 50 C.J.S. Judgments § 868, identifying, in part, a *final* judgment of a foreign jurisdiction as one "capable of being there enforced by final process" and one creating a "definite, absolute and unconditional indebtedness". Note also that in the Sistare case, the U. S. Supreme Court considered the question of whether a "vested right" attaches.

These three related tests—the "final process" test, the "indebtedness" test, and the "vested right" test—are all very pertinent in the determination of the finality of a judgment. Measured by all of them, the Texas decree for future child support payments in this case is not final and binding within the meaning of the full faith and credit clause. It cannot be enforced in Texas by final process or any method except contempt proceedings, and not then where respondent shows an involuntary inability to pay; it creates no indebtedness; and no vested right to receive the payments attaches.

In connection with the vested right question, we have previously noted that Texas

courts have held that the payment of child support arrearages cannot be enforced, after the divorced husband's death, against his estate; Clay v. Siercovich, Tex.Civ.App., 388 S.W.2d 25. Such being the case, it can hardly be said that a Texas child support judgment for future payments creates a vested right.

Moving now to the second ground of my dissent, it is my view that conceding for purposes of argument only that the Texas decree in this case is entitled to full faith and credit, it is accorded force and effect so far beyond that which it would receive in Texas as to amount to a denial of due process of law.

As above noted, in Texas this decree cannot be the basis of a money (lump sum) judgment; it cannot be enforced by the garnishment or execution; it does not create a debt or a vested right. If the Texas decree is accorded unlimited force and effect in Oklahoma, the trial court may render a judgment on re-trial of this case under which a debt and a vested right *are* created, and which *can* be enforced by garnishment or execution. Additionally, the judgment of the Oklahoma court on re-trial may become a lien against the husband's real estate. This could not happen in Texas; Article 4638, Texas Civil Statutes, provides in part that decrees providing for divorce and child support shall not " * * * compel either party to divest himself or herself of the title to real estate".

In suits on foreign judgments, it is well settled that, with certain exceptions not applicable here, no defense which goes to the merits of the original controversy may be set up, 50 C.J.S. Judgments § 847 a, and that a valid foreign judgment on the merits is conclusive in every other state, and the merits may not be reinvestigated, 50 C.J.S. Judgments § 894.

Thus, the defendant husband in this case may become subject to garnishment or execution, and to a forced sale of his real estate, because of an Oklahoma judgment rendered after a trial *in which the merits of the original controversy were not litigated,*

which judgment is based solely upon a Texas judgment *under which none of those things was possible.* The federal statute which implements the full faith and credit clause, 28 U.S.C.A. § 1738, requires only that Texas decrees be accorded such faith and credit " * * * as they have by law or usage in the courts of such State, Territory or Possession from which they are taken". In my view, if the full faith and credit clause is to be applied in this case, it would be satisfied by an Oklahoma judgment limited in force and effect to the same extent that the Texas judgment on which it is based is limited.

I am aware of the view obtaining in some jurisdictions that a foreign judgment for alimony may be enforced in the state of the forum by equitable remedies or contempt proceedings. See annotation at 18 A.L.R.2d 862. Such relief was not requested in the case now before us. I am also aware of the view that even though a particular foreign judgment may not be enforceable under the full faith and credit clause, the state of the forum, under the principles of comity, may enforce it if it desires to do so. See Worthley v. Worthley, 44 Cal.2d 465, 283 P.2d 19. In my opinion, because of the due process question previously discussed, Oklahoma courts are precluded from giving the Texas judgment unlimited force and effect even under the principles of comity.

In conclusion, it may be noted that under my dissenting views, the plaintiff in this case would not be without a remedy. She may proceed under the Uniform Reciprocal Enforcement of Support Act, which has been adopted in both Oklahoma and Texas; 12 O.S.1961, Sec. 1600.1 et seq.; Texas Civil Statutes, Art. 2328b–1 et seq. Under the Uniform Act, the "duty of support" may be enforced regardless of whether the court order imposing it is interlocutory or final. See 12 O.S.1961, Sec. 1600.3(6).

I respectfully dissent.

I am authorized to state that DAVISON and IRWIN, JJ., concur in the views herein expressed.