

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00171-CV

ROSS MANDEL AND LEA MANDEL

APPELLANTS

V.

LEWISVILLE INDEPENDENT
SCHOOL DISTRICT; COUNTY OF
DENTON, TEXAS; AND CITY OF
PLANO

APPELLEES

----------

## FROM THE 431ST DISTRICT COURT OF DENTON COUNTY
## TRIAL COURT NO. 2011-0490-431

----------

## AND

### NO. 02-13-00412-CV

IN RE ROSS MANDEL AND LEA
MANDEL

RELATORS

----------

## ORIGINAL PROCEEDING
## TRIAL COURT NO. 2011-0490-431

----------

# OPINION

----------

## I. Introduction

Appellee Lewisville Independent School District (Lewisville ISD) sued Appellants Ross Mandel and Lea Mandel and lienholder Koslow Technologies Corporation Charitable Remainder Trust (Koslow) to collect delinquent ad valorem taxes owed by the Mandels on their residence located at 6648 Castle Pines Drive, Plano, Texas.  Appellees the City of Plano (the City) and the County of Denton, Texas, (the County) intervened to assert their claims for delinquent taxes owed to those taxing entities by the Mandels on their property.  The trial court conducted a final hearing, at which the Mandels did not appear, and rendered a default judgment in favor of Lewisville ISD, the City, and the County against Ross Mandel and Lea Mandel and a judgment against Koslow in rem. The Denton County District Clerk issued an order of sale, the tax liens were foreclosed, and the property was sold at a sheriff's sale to Claussner Holdings, LLC (Claussner).  The Mandels filed this restricted appeal complaining of the validity of the default judgment against them and the tax sale of their residence.

After submission of this appeal with oral argument, the trial court clerk issued a writ of possession, at Claussner's request, as provided by the default judgment.  Even though the trial court clerk issued a writ of supersedeas to stay any execution of the writ of possession, Denton County Constable Ron Smith began executing the writ of possession.  On the Mandels' motion, we granted an

emergency stay of execution of the writ of possession during its execution. Constable Smith nevertheless executed the writ of possession and evicted the Mandels from the property. The Mandels filed a petition for writ of mandamus asking this court to direct either Claussner or Constable Smith to return possession of the property to the Mandels or to direct the trial court to do the same. We consolidated the petition for writ of mandamus and the restricted appeal for decision because the petition for writ of mandamus is dependent upon our determination of the merits of the restricted appeal.

We affirm the trial court's judgment against the Mandels, lift our emergency stay, and dismiss the Mandel's petition for writ of mandamus as moot.

## II. Chronology of Events

### A. Events relevant to default judgment and sale

On July 29, 2011, Lewisville ISD filed its original petition against the Mandels and the lienholder, Koslow, for payment of delinquent 2010 property taxes on the Mandels' home. Lea Mandel was served by personal service of process on August 5, 2011. Ross Mandel was served by personal service of process on August 16, 2011. The Mandels did not answer. Citation for service on Koslow by certified mail was returned unserved. While the case was pending, at some point in the following months, Koslow paid the delinquent 2010 taxes.

Lewisville ISD filed its first amended original petition on June 7, 2012, eliminating its cause of action for 2010 taxes and alleging that the Mandels were delinquent on their 2011 taxes. Lewisville ISD's certificate of service appended

3

to its amended petition stated that it served the Mandels with a copy of the amended petition pursuant to Texas Rule of Civil Procedure 21a. The Mandels did not answer. Koslow was personally served and answered on June 16, 2012. On November 2, 2012, the City intervened. On November 13, 2012, the County intervened. The City and the County each sought to recover delinquent 2011 property taxes owed by the Mandels.

On November 15, 2012, the case was called to trial. The Mandels did not appear. Koslow appeared through its attorney. The trial court overruled Koslow's objections to the lack of personal service of the amended petition on the Mandels and to the lack of personal service on either the Mandels or Koslow by the intervenors. On the same date, the trial court signed a final default judgment against the Mandels and final judgment against Koslow in rem for the amounts owed to Lewisville ISD, the City, and the County for the delinquent 2011 taxes, including penalties and interest until paid. The judgment also ordered foreclosure of the tax liens on the property, issuance of an order of public sale of the property, payment to the taxing entities of the amounts owed from the proceeds, and issuance of a writ of possession to the purchaser of the property at the sale.

On November 16, 2012, the Denton County District Clerk mailed a notice of the judgment to each of the Mandels, as well as a billing statement for the court costs. On January 4, 2013, the Denton County District Clerk issued an order of sale for foreclosure of the tax liens and for court costs recovered in the

4

default judgment.  The Denton County Sheriff published notice of the sale and on March 13, 2013, mailed a copy of the notice to the Mandels.  The property was sold at a sheriff's sale on the Denton County Courthouse steps to Claussner on April 2, 2013.  The Mandels perfected this restricted appeal on May 14, 2013.

## B.  Events relevant to petition for writ of mandamus

On October 21, 2013, at Claussner's request, the trial court clerk issued a writ of possession as ordered by the judgment.  The Mandels then filed a net worth affidavit, a cash deposit in lieu of supersedeas bond, and a motion to quash or vacate the writ of possession.  On October 31, 2013, the trial court clerk issued a writ of supersedeas requiring the constable to desist from efforts to obtain possession of the property for Claussner.  But on November 12, 2013, Constable Smith went to the Mandels' residence to execute the writ of possession.  The Mandels immediately filed an emergency motion to enforce the writ of supersedeas in the trial court, and Constable Smith agreed to leave the Mandels' property without executing the writ of possession pending the hearing on the Mandels' motion.  During a telephonic hearing on November 12, 2013, the trial court informed the Mandels and Claussner that it would not consider the Mandels' motion to enforce the writ of supersedeas or their motion to quash or vacate the writ of possession until November 15, 2013.  At Claussner's urging, Constable Smith returned to the property the morning of November 13, 2013, proceeded to begin executing the writ of possession, removed the Mandels and their possessions from the property, and delivered the property to Claussner,

5

refusing to recognize the writ of supersedeas. The Mandels immediately filed an emergency motion in this court to stay execution of the writ of possession. We granted the motion that same day—November 13, 2013—and stayed any execution of the writ of possession until further order of this court. On November 15, 2013, the trial court denied the Mandels' motion to enforce the writ of supersedeas and their motion to quash or vacate the writ of possession.

The Mandels then filed a petition for writ of mandamus in this court to compel the trial court to vacate its order denying their motion to quash or vacate the writ of possession and its order denying their motion to enforce the writ of supersedeas. The Mandels requested this court to direct either Claussner or Constable Smith to return possession of the property to the Mandels or to direct the trial court to do the same.[1]

### III. Standard of Review on Restricted Appeal

A restricted appeal is available for the limited purpose of providing a party who did not participate at trial with the opportunity to correct an erroneous

---

[1]We abated the appeal and petition for writ of mandamus and issued an order to Constable Smith to show cause at a hearing in the trial court as to why he should not be held in contempt of this court for failing to comply with our stay order by proceeding to execute the writ of possession on behalf of Claussner, physically removing the Mandels and their personal property from the property, changing the locks on the doors to the residence, and turning the property over to Claussner. After a hearing in the trial court at which Constable Smith appeared and presented evidence, this court declined to hold him in contempt and reinstated the appeal and petition for writ of mandamus. *See* this court's order declining to hold Constable Smith in contempt dated July 1, 2014, attached as an Appendix to this opinion.

6

judgment. *In re E.K.N.*, 24 S.W.3d 586, 590 (Tex. App.—Fort Worth 2000, no pet.). To prevail in a restricted appeal, an appellant must show that (1) the notice of appeal was filed within six months of the date the complained-of judgment or order was signed; (2) the appellant was a party to the suit who did not participate in the hearing that resulted in the judgment or order; (3) the appellant did not timely file a post-judgment motion, request findings of fact and conclusions of law, or file a notice of appeal within the time permitted under rule 26.1(a); and (4) the complained-of error is apparent from the face of the record. Tex. R. App. P. 26.1(c), 30; *Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 848 (Tex. 2004). For the purpose of a restricted appeal, the face of the record consists of all papers on file in the appeal, including the reporter's record of the final hearing, along with all papers on file with the trial court clerk at the time the judgment was entered. *Norman Commc'ns v. Tex. Eastman Co.*, 955 S.W.2d 269, 270 (Tex. 1997). The first three requirements are not in dispute in this case. Only the fourth element is at issue here—whether error is apparent on the face of the record.

There is no presumption in favor of proper issuance, service, and return of citation. *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994). If the record fails to affirmatively show strict compliance with the rules of civil procedure governing issuance, service, and return of citation, error is apparent on the face of the record, and attempted service of process is invalid and of no effect. *Lytle v. Cunningham*, 261 S.W.3d 837, 840 (Tex. App.—Dallas 2008, no pet.). When

7

the attempted service of process is invalid, the trial court acquires no personal jurisdiction over the defendant, and the default judgment is void. *Id.*

## IV. Analysis

**A.    The return of citation personally served on Ross Mandel was in strict compliance with the applicable rules of civil procedure.**

By their second issue, the Mandels contend that the citation by which Ross Mandel was served with Lewisville ISD's original petition is not in strict compliance with the applicable rules because the return does not state when citation was personally served on him.[2]   The Mandels do not dispute and the record affirmatively reflects that the officer noted on his return of citation that he received the citation on August 3, 2011, at 1:27 p.m. and that he executed the citation by personally delivering it to Ross Mandel on August 16, 2011, at 6648 Castle Pines Drive, Plano, County of Denton, Texas.   The Mandels also do not dispute that Lea Mandel, Ross Mandel's wife, was personally served with citation, nor do they complain that the citation return for her is not in strict compliance with the applicable rules.   But Ross Mandel contends that, as to him, listing the date of service, location, and manner of service on the return was not a sufficient return of the citation because the officer serving the citation did not also state on the return the *hour* that Ross Mandel was served as required by rule 16 of the Texas Rules of Civil Procedure.   *See* Tex. R. Civ. P. 16.   In response,

---

[2]We will address the Mandels' first issue complaining of denial of due process below.

8

Lewisville ISD, as well the City and the County, contend that the return strictly complies with the applicable rules, pointing out that a suit to recover delinquent ad valorem taxes is governed by other rules of civil procedure that specifically apply to citations in tax suits.

A winding road through the rules of civil procedure leads us to those that govern suits for delinquent ad valorem taxes. We begin with Rule 2, the last sentence of which states "that Rule 117a shall control with respect to citations in tax suits." Tex. R. Civ. P. 2. In turn, rule 117a in relevant part states, "In all suits for collection of delinquent ad valorem taxes, the rules of civil procedure governing issuance and service of citation shall control the issuance and service of citation therein, except as herein otherwise specifically provided." Tex. R. Civ. P. 117a. Subsection 1 of rule 117a, entitled "Personal Service: Owner and Residence Known, Within State," provides:

> Where any defendant in a tax suit is a resident of the State of Texas . . . the process shall conform substantially to the form hereinafter set out for personal service and shall contain the essential elements and be served and returned and otherwise regulated *by the provisions of Rules 99 to 107, inclusive.*"

Tex. R. Civ. P. 117a(1) (emphasis added); *see Conseco Fin. Servicing v. Klein Indep. Sch. Dist.*, 78 S.W.3d 666, 673–74 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (noting that Rule 2 requires application of rule 117a to delinquent ad valorem tax suits). Because Ross Mandel complains of the sufficiency of service of the citation on him, we look to rule 107, entitled "Return of Service," to

9

determine sufficiency of the return of citation in a suit for delinquent taxes. *See*

Tex. R. Civ. P. 107, 733–34 S.W.2d XLV (1987, amended 1990),117a(1).

The version of rule 107 that was in effect on the date Ross Mandel was served required that the officer or authorized person executing the citation (1) endorse the return, (2) "state when the citation was served and the manner of service," and (3) sign the return officially.  Tex. R. Civ. P. 107, 733–34 S.W.2d XLV (1987, amended 1990).[3]  A return of service should be given a fair, reasonable, and natural construction as to its plain intent and meaning. *Dole v. LSREF2 APEX 2, LLC*, 425 S.W.3d 617, 621–22 (Tex. App.—Dallas 2014, no pet.) (holding typographical error in date of service did not render return fatally defective when actual date was discernable from record); *Conseco Fin. Servicing*, 78 S.W.3d at 673 (holding unreadable handwritten date in endorsement of return plainly discernable when return was viewed as a whole); *Nelson v. Remmert*, 726 S.W.2d 171, 172 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (holding return complied with rule 107 although date of delivery or receipt by certified mail was omitted but officer endorsed that he delivered citation by certified mail on December 10, 1985, and postmark on certified mail return receipt was dated December 14, 1985).

---

[3]In addition, Rule 107 provided, and still does, that no default judgment could be granted unless the citation had been on file with the clerk of the court for ten days, exclusive of the day of filing and the day of judgment. *Compare* Tex. R. Civ. P. 107, *with* Tex. R. Civ. P. 107, 733–34 S.W.2d XLV (1987, amended 1990).  The Mandels do not dispute that the returns had been on file more than ten days in this case.

Ross Mandel's specific complaint is not that the return omits the date upon which he was served but that it omits the *hour* of service. The supreme court stated a century and a half ago in *Clark v. Wilcox*, when addressing a similar return and statutory language prior to adoption of the civil rules, that a return that stated the date and manner of service, signed by the serving officer, was a sufficient return of citation to comply with the previous statute then in effect, requiring that the return state "fully the time and manner of service." 31 Tex. 322, 328–29 (1868). The supreme court was of the opinion that "time" did not "mean senseless or unnecessary details of the acts of service and of the time when performed; such for example, as where the officer should note the hour of the day." *Id.* at 328. Rather, the interpretation of the statute articulated by the opinion in *Clark* was that "[t]he manner is personal service, *and the time [is] the day, month and year.*" *Id.* (emphasis added). Thus, the "time" requirement, according to the supreme court, was fully satisfied by stating the date on which the citation was executed. *See id.* at 328–29.

The ruling in *Clark* has remained undisturbed for a century and a half.[4] The Mandels have provided us with no authority otherwise—that strict

_____

[4]During this period of Reconstruction, the supreme court was composed of justices, including the author of the *Clark* opinion, the Honorable Andrew J. Hamilton, appointed by the military commander in charge of Texas at the time and referred to collectively as the "Military Court." *See* Hans W. Baade, *Chapters in the History of the Supreme Court of Texas: Reconstruction and "Redemption" (1866–1882)*, 40 St. Mary's L.J. 17, 50–72 (2008). Justice Hamilton, Alabama-born, had a distinguished career, having previously practiced law in Austin for years, served in both the legislature and Congress and as

compliance with rule 107 requires stating the hour of service in addition to the date—nor have we found any case so holding even though rule 107 has carried forward substantially the same language as the predecessor statute. The supreme court amended rule 107, as well as a number of other rules regarding service of process and other writs, effective January 1, 2012.[5] Under amended rule 107, a return of service must state "*the date and time* the process was received" by the officer for service but need only state "the *date* of service." Tex. R. Civ. P. 107 (emphasis added). The difference between requiring that the return state the "date and time" the process was *received* by the officer and requiring only the "date" of *service* on the party (but not the hour) further supports Lewisville ISD's and the other taxing entities' argument that the return need only state the date of service.

---

Texas's first provisional governor. *See id.* at 54; *see generally* 5 Louis J. Wortham, *A History of Texas from Wilderness to Commonwealth* 5–75 (1924). While that court's opinions are not considered "precedential," they may still be considered persuasive. Jim Paulsen and James Hambleton, *Confederates and Carpetbaggers: The Precedential Value of Decisions from the Civil War and Reconstruction Era*, 51 Tex. B.J. 916, 918–19 (Oct. 1988); *cf. TAC Americas, Inc. v. Boothe*, 94 S.W.3d 315, 321 (Tex. App.—Austin 2002, no pet.) (noting in dicta that *Clark* is of dubious "precedential" value and generally cited only for the proposition that the mere omission of the hour of service will not be fatal (citing 3 Roy W. McDonald and Elaine A. Grafton Carlson, *Texas Civil Practice* § 11:66 (2d ed. 2001))).

[5] *See* Supreme Court of Tex., *Final Approval of Amendments to Tex. Rules of Civil Procedure 99, 107, 108, 117, 239, 534, 536a, 668, 689, 737.4, 742, and 742a*, Misc. Docket No. 11-9250 (Dec. 12, 2011).

12

The court's reasoning in *Clark* and the wording of rule 107 both before and after its revision demonstrate that stating the date of service in the return was sufficient to constitute strict compliance with the applicable rule 107.[6] The supreme court could easily have drafted the rule to require that the officer state the hour as well as the date of service in the return, but it did not do so. The date, but not the hour, of service is crucial to determine future procedural deadlines such as the date on which an answer is to be filed or to otherwise make an appearance or risk default. *See* Tex. R. Civ. P. 99(b), 239. Under the version of rule 107 in effect at the time of service, the officer who served Ross Mandel fulfilled the rule's requirements by stating on the pre-printed return form that citation was executed by delivery to Ross Mandel, in person, of a true copy of the citation, together with the accompanying copy of the petition, on August 16, 2011, at 6648 Castle Pines Drive, Plano, County of Denton, Texas.[7]

The Mandels urge that the supreme court's interpretation of rule 16 in *Insurance Co. of State of Pennsylvania v. Lejeune*, 297 S.W.3d 254, 255–56

[6]We decline to accept the Mandels' contention that the existence of blanks for the hour of service in virtually every printed form for return of service somehow supports their argument that the officer serving a citation must fill in the blank with the hour. In this restricted appeal, there is no evidence that every such form contains a blank for the hour of service and we do not judicially know that every such form printed in Texas contains such a blank.

[7]The return also states that the citation was executed by personal delivery on Ross Mandel in the "A.M." of August 16, 2011, as indicated by an "A" handwritten in the blank between a typewritten "o'clock" and "M." A copy of the citation, which was filed with the return, was filed in the trial court at 1:23 p.m. on the same date.

(Tex. 2009), dictates that a return of citation, such as the one here, must state the hour as well as the date on which the citation was served. But the opinion in *Lejuene* says nothing about what a return must show regarding when citation is served. As explained in the opinion, the issue in that case involved the requirement in rule 16 that "every officer or authorized person shall endorse on all process and precepts coming to his hand the *day and hour* on which he *received* them."[8] *Id.* at 256 (emphasis added) (quoting Tex. R. Civ. P. 16). The clerk in that case failed to state the hour on which he or she received it. *Id.* at 255–56. Rule 16 expressly requires that the hour of *receipt* be stated, but it does not require that the hour of *service* be stated, which is the issue in this case. *See* Tex. R. Civ. P. 16. The officer who executed the citation at issue here specifically stated in the return that he received the citation on August 3, 2011, at 1:27 p.m., meeting the only requirement at issue in *Lejeune.*

In any event, rule 107, rather than general rule 16, applies for the reasons stated above. The officer who served Ross Mandel met all of the requirements of the applicable rule 107 because he (1) stated the day and hour on which he received the citation as August 3, 2011, at 1:27 p.m., meeting the requirements in *Lejeune*; (2) noted the manner in which he served the citation by stating that a

---

[8]Rule 16, entitled "Shall Endorse All Process" is located under section 1, "General Rules" for practice in district and county courts and governs service of process in general. *See* Tex. R. Civ. P. 16. The Mandels have not pointed out how rule 16 differs from rule 107 so as to require the hour of service to be endorsed on the return when rule 107 does not.

14

true copy was delivered in person to Ross Mandel; (3) stated the time and place of service as being the morning ("A.M.") of August 16, 2011, at 6648 Castle Pines Drive, Plano, County of Denton, Texas; and (4) signed the return officially. We hold that the record shows on its face that service of citation on Ross Mandel strictly complied with the Texas Rules of Civil Procedure.[9]  Accordingly, we overrule the Mandels' second issue.

**B.     Lewisville ISD was not required to serve its amended petition seeking delinquent ad valorem taxes for 2011 on the Mandels by citation.**

The Mandels contend by their third issue that Lewisville ISD was required to serve them with a new citation when it filed its first amended original petition because the amended petition substituted a new cause of action for delinquent taxes for the year 2011.  The Mandels argue that when an amended pleading asserts a new cause of action distinct from that alleged in the original pleading or seeks a more onerous judgment and the defendant has not made an appearance, entirely new service of process is essential to enable the plaintiff to proceed to judgment.

---

[9]To the extent that the Mandels contend that failure to set forth the hour of service in the citation return prevented the trial court from acquiring personal jurisdiction to render judgment against Ross Mandel, we disagree.  The trial court acquires personal jurisdiction over a defendant when the citation is served on that defendant.  *See Rose v. Rose*, 117 S.W.3d 84, 87 (Tex. App.—Waco 2003, no pet.).  "It is the service (of process), and not the return, which gives the Court jurisdiction over the defendant."  *A. J. Hill Co. v. Tex-Tan of Yoakum*, 235 S.W.2d 945, 947 (Tex. Civ. App.—Galveston 1951, writ dism'd) (quoting *Gunter's Unknown Heirs & Legal Representatives v. Lagow*, 191 S.W.2d 111, 113 (Tex. Civ. App.—Austin 1945, writ ref'd)).

Citing cases holding in other contexts that each tax year constitutes a new cause of action, the Mandels contend that failure of Lewisville ISD to serve them by citation with a copy of the amended petition violated their due process rights under the Fourteenth Amendment to the United States Constitution and Article 1, Section 19 of the Texas constitution. However, the Mandels candidly concede that in *In re E.A.*, the supreme court held that service under rule 21a satisfies the requirement of service of a more onerous amended petition in order for a default judgment against a non-answering defendant to stand. 287 S.W.3d 1, 4 (Tex. 2009). We interpret *E.A.* to hold further that service under rule 21a suffices to satisfy the requirement of service of an amended petition asserting a new cause of action as well as one that seeks more onerous relief. *See id.* (citing *In re R.D.C.*, 912 S.W.2d 854, 856 (Tex. App.—Eastland 1995, no writ) (holding that a plaintiff who amends his or her petition may serve a non-answering defendant by complying with the filing and service requirements of Texas Rules of Civil Procedure 21 and 21a without regard to whether the amendment seeks a more onerous judgment or adds a new cause of action)).[10]

---

[10]Under the version of rule 21a in effect at the time the amended pleading was filed in 2012, all notices other than citation could be served by delivering a copy to the party either in person, by agent, or by certified or registered mail to the party's last known address or by fax to the party's current telecopier address. Tex. R. Civ. P. 21a, 661–62 S.W.2d XXXVII (1983, amended 1990). "A certificate by a party or an attorney of record, or the return of an officer, or the affidavit of any person showing service of a notice shall be prima facie evidence of the fact of service." *Id.* Rule 21a further provided that "[t]he party or attorney of record shall certify to the court compliance with this rule in writing over signature and on the filed instrument." *Id.*

16

The Mandels argue that the certificate of service appended to Lewisville ISD's amended pleading and signed by its counsel of record fails to establish strict compliance with the rules because, while the certificate would ordinarily raise a presumption of service, no such presumption applies in a restricted appeal. Lewisville ISD responds that the record affirmatively reflects that it properly served the Mandels as shown by the certificate of service certifying that copies of the amended petition were sent to "all parties and/or their attorneys of record in this suit, pursuant to Rule 21a of the Texas Rules of Civil Procedure, on this 7th day of June, 2012." We agree. The certificate of service does not merely raise a presumption of service but is "prima facie evidence of the fact of service," as provided by the rule itself. Tex. R. Civ. P. 21a, 661–62 S.W.2d XXXVII (1983, amended 1990).

The Mandels point to no affirmative evidence or showing on the face of the record that rebuts the prima facie evidence of service established by the certificate of service, such as an incorrect address or zip code or return of the certified mail as "unclaimed."[11] And even if the Mandels had produced such evidence after judgment, the rule in Texas "has long been that evidence not before the trial court prior to final judgment may not be considered in a [restricted

---

[11]The Mandels contend that Lewisville ISD "conceded" that its attempt to serve the Mandels by certified mail "failed" because the certified letter was returned unclaimed. But the Mandels' brief also candidly acknowledges that any such concession by Lewisville ISD was outside the record. Therefore, we cannot consider it.

17

appeal] proceeding." *Gen. Elec. Co. v. Falcon Ridge Apartments, Joint Venture*, 811 S.W.2d 942, 944 (Tex. 1991). When a party claims in a restricted appeal that a required notice was not given or a required hearing was never held, the error must appear on the face of the record. *Ginn v. Forrester*, 282 S.W.3d 430, 433 (Tex. 2009). In absence of any proof to the contrary, the presumption is conclusive and has the force of a rule of law. *Brown v. Ogbolu*, 331 S.W.3d 530, 534 (Tex. App.—Dallas 2011, no pet.).[12] Thus, we hold that the certificate of service of the amended petition by Lewisville ISD by certified mail under rule 21a was sufficient to affirmatively establish on the face of the record strict compliance with the rules and with due process.

Ross Mandel steadfastly maintains that since no effective service of the original petition was ever made on him, service of the amended petition by certified mail pursuant to rule 21a could not suffice. But we have already held that service of the original petition on him by citation was effective in strict compliance with Rule 107; therefore, under *E.A.,* service of Lewisville ISD's first

---

[12]The Mandels also argue that even if we may otherwise accord a presumption pursuant to rule 21a, we should not do so here because service of the amended petition on the Mandels was challenged at the default hearing in the trial court. But the challenge was made by the attorney for the lienholder, not by the Mandels. The trial court overruled his challenge and objection, pointing out that the attorney did not represent the Mandels and that, in any event, no citation was needed because this was a tax suit and the Mandels were put on notice by the original citation that delinquent taxes could be recovered that accrued up to the date of judgment. The trial court was correct for reasons shown below.

18

original amended petition by certified mail was sufficient under rule 21a. *See* 287 S.W.3d at 4. Accordingly, we overrule the Mandels' third issue.

## C. Intervenors were not required to serve the Mandels with their petitions in intervention.

The property that is the subject of the suit filed by Lewisville ISD is also situated within the boundaries of two other taxing jurisdictions, the County and the City. In their fourth issue, the Mandels contend that those two taxing entities were required to and failed to have new citations served on the Mandels of their petitions in intervention. But the Mandels overlook Rule 117a(4), which provides that only one citation needs to be issued and served in suits for collection of delinquent taxes despite the addition or even the potential addition of other taxing entities. Tex. R. Civ. P. 117a(4). Subsection 4 of Rule 117a sets forth the requirements for citation in tax suits, as follows:

> Any process authorized by this rule may issue jointly in behalf of all taxing units who are plaintiffs or intervenors in any tax suit. The statement of the nature of the suit . . . shall state, in substance, that in such suit the plaintiff ***and all other taxing units who may set up their claims therein seek recovery of the delinquent ad valorem taxes due on said property. . . . Such citation shall also show the names of all taxing units which assess and collect taxes on said property not made parties to such suit. . . .***

*Id.* (emphasis added). Rule 117a(4) also contains this additional language:

> After citation . . . has been given on behalf of any plaintiff or intervenor taxing unit, ***the court shall have jurisdiction to hear and determine the tax claims of all taxing units who are parties plaintiff, intervenor or defendant at the time such process is issued and of all taxing units intervening after such process is issued . . . without the necessity of further citation . . .*** and any taxing unit having a tax claim against said property may . . . set up

19

and have determined its tax claim ***without the necessity of further citation or notice to any parties to such suit.***

*Id.* (emphasis added).

Under the express language of the rule, any taxing unit named in the citation, although not yet a party to the tax suit, may later join the suit without further service of process. *Id.* In both its original and its first amended petition, Lewisville ISD named the City and the County as the other taxing units that assessed and collected taxes on the property. And, as required by Rule 117a(4), each citation served by Lewisville ISD on the Mandels likewise named those taxing units. The citations, themselves, stated:

> Plaintiff and ***all other taxing units who may set up their tax claims herein*** seek recovery of delinquent ad valorem taxes on the property hereinabove described, and in addition to the taxes, all interest, penalties, and costs allowed by law thereon ***up to and including the day of judgment herein***, and the establishment and foreclosure of liens securing the payment of same, as provided by law. [Emphasis added.]

The citations further advised the Mandels:

> All parties to this suit, including Plaintiff, Defendant(s) and Intervenors, ***shall take notice that claims not only for any taxes which were delinquent on said property at the time this suit was filed but all taxes becoming delinquent thereon at any time thereafter up to the day of judgment***, including all interest, penalties, and costs allowed by law thereon, may upon request therefor, be recovered herein ***without further citation or notice to any parties herein***, ***and all said parties shall take notice of and plead and answer to all claims and pleadings now on file and which may hereafter be filed in this cause by all other parties hereto, and by all of those taxing units above named, who may intervene herein and set up their respective tax claims against the property***. [Emphasis added.]

20

Not only did the citations by which the Mandels were served contain the language required by rule 117(a)(4), but Lewisville ISD also conspicuously alleged the names of the City and the County as additional taxing entities and set forth the language from the rule quoted above both in its original and its first amended original petitions. The County filed its plea of intervention claiming delinquent taxes owed by the Mandels for 2011 on November 13, 2012. The City filed its plea in intervention on November 2, 2012, likewise claiming delinquent taxes owed by the Mandels on the property for 2011. Under rule 117a(4), having been *named* in the citations, they were entitled to do so "without further notice or citation to any of the parties herein." Tex. R. Civ. P. 117a(4). In essence, the naming of the taxing units in the citations was sufficient under that rule to confer jurisdiction over those taxing units. *See Conseco Fin. Servicing*, 78 S.W.3d at 674 ("We agree that this, without more, is sufficient under Rule 117a to confer jurisdiction over intervening taxing units already named in the citation."). Moreover, we have previously held that intervening taxing units may join a suit for delinquent taxes and present their claims without new citation being issued or served on defendants. *Stoker v. City of Fort Worth*, No. 02-08-00103-CV, 2009 WL 2138951, at *3 (Tex. App.—Fort Worth July 16, 2009, no pet.) (mem. op.) (rejecting argument that court lacked jurisdiction over interventions by taxing units without new service on defendants). Accordingly, we overrule the Mandels' fourth issue.

21

**D.**   **The Mandels have not shown denial of due process by failure to strictly comply with the rules governing service of process.**

By their first issue, the Mandels contend that failure to strictly comply with the rules applicable to service of process violated their due process rights. We held above that there was no failure by Lewisville ISD to strictly comply with the rules of service when serving the original petition. As to service on the Mandels by the intervening taxing units, we have also held that rule117a(4) provides that any taxing unit named in the citation, although not yet a party to the tax suit, may later join the suit without further service of process. *See* Tex. R. Civ. P. 117a(4).

While there is some variation in wording, the procedure set forth in Rule 117a is virtually identical with the procedure set forth in former article 7345b, including the language and procedure regarding claims for taxes by intervening taxing units. *Compare* Tex. R. Civ. P. 117a, *with* Act of May 12, 1937, 45th Leg., R.S., ch. 506, 1937 Tex. Gen. Laws 1494-a, *repealed by* Act of May 24, 1979, 66th Leg., R.S., ch. 841, § 6, 1979 Tex. Gen. Laws 2217, 2329. In 1939, the supreme court upheld the constitutionality of article 7345b in *Mexia Indep. Sch. Dist. v. City of Mexia*, 134 Tex. 95, 101–02, 133 S.W.2d 118, 121–22 (1939). In that case, the City of Mexia brought suit against a property owner to collect delinquent taxes*. Id.* at 98, 133 S.W.2d at 120. Only one citation was served on the defendant. *Id.* However, three other taxing authorities were named in the petition and citation as defendants: Mexia ISD, the State of Texas, and Limestone County. *Id.* Mexia ISD answered, filed a plea in intervention and

22

filed a cross-claim against the property owner for taxes due and for foreclosure of its lien. *Id.* But no new citation was served on the property owner by Mexia ISD. *Id.*

The supreme court noted that section 4 of article 7345b required the citation to inform the recipient that he or she was required to take notice of all present and future pleadings on file that may be filed by any and all parties. *Id.* at 99, 133 S.W.2d at 120. The court further stated that just as in any ordinary suit where the respondent can be required to take notice of all subsequent pleadings, interventions, and cross-actions by the public generally, there was no reason for these types of suit to require any less of a defendant who has been served with citation. *Id.* at 101, 133 S.W.2d at 122. Finally, the court held that "the notice required by the statute affords all defendants a fair opportunity to be heard and therefore it does not violate the due process clause of our Constitution." *Id.* at 101–02, 133 S.W.2d at 122.

Similar to the citation in *Mexia,* the citation in this case stated:

> All parties to this suit, including Plaintiffs, Defendants and Intervenors, shall take notice [of] claims not only for any taxes which were delinquent on said property at the time this suit was filed but all taxes becoming delinquent thereon at any time thereafter up to the day of judgment . . . and all said parties shall take notice of and plead and answer to all claims and pleadings now on file **and which may hereafter be filed in this cause by all other parties . . . .** [Emphasis added.]

Subsequent to the decision in *Mexia*, our sister court held in *Conseco* that current rule 117a comports with due process, noting the general rule that the

23

legislature in its discretion may prescribe what notice shall be given to a defendant in a suit, subject to the condition that the notice prescribed must conform to the requirements of due process of law. *Conseco Fin. Servicing*, 78 S.W.3d at 675. In essence, rule 117a(4) means that taxing units named in a citation as having claims for delinquent taxes on particular property, but not parties to the tax suit, may later join the suit without further service of process or notice. Indeed, the naming of the taxing unit in the citation is sufficient under Rule 117a to confer jurisdiction over intervening taxing units named in the citation. *Id.* at 674; *see Stoker*, 2009 WL 2138951, at *3.

The purpose of citation is to give the court jurisdiction over the parties and provide notice to the defendant that it has been sued by a particular party asserting a particular claim, so that due process will be served and the defendant will have an opportunity to appear and defend the action. *Conseco Fin. Servicing*, 78 S.W.3d at 675–76 (citing *Sgitcovich v. Sgitcovich*, 150 Tex. 398, 404, 241 S.W.2d 142, 146 (1951); *Bozeman v. Arlington Heights Sanitarium*, 134 S.W.2d 350, 351–52 (Tex. Civ. App.—Dallas 1939, writ ref'd)). The requirement of due process is satisfied when the notice prescribed affords the party a fair opportunity to appear and defend its interests. *Sgitcovich*, 241 S.W.2d at 146.

Here, the citation gave the Mandels sufficient notice that they were being sued by Lewisville ISD for delinquent ad valorem taxes on real property located at a specific address. By naming both the City and the County, which later intervened, the citation served with Lewisville ISD's original petition gave the

24

Mandels all the notice to which they were entitled and gave them the opportunity to appear and defend the suit. Nothing in the record before us intimates that they were misled or placed at a disadvantage by the citation and pleadings. Thus, we hold that the citation served on the Mandels fully conformed with the requirements of due process. *See Conseco Fin. Servicing*, 78 S.W.3d at 676; *Mexia*, 134 Tex. at 101–02, 133 S.W.2d at 122. Accordingly, we overrule the Mandels' first issue.

**E.    The Mandels were not denied due process in connection with the notice and order of sale.**

By their fifth issue, the Mandels complain of denial of due process with respect to the notice and order of sale, contending that there is no evidence apparent on the face of the record that they were ever served with either the notice or the order in a manner calculated to reach them. For that proposition, they rely on *Jones v. Flowers*, in which the United States Supreme Court held that "[b]efore a State may take property and sell it for unpaid taxes, the Due Process Clause of the Fourteenth Amendment requires the government to provide the owner 'notice and opportunity for hearing appropriate to the nature of the case.'" 547 U.S. 220, 223, 126 S. Ct. 1708, 1712 (2006) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 656–57 (1950)). In *Flowers*, the Court set aside a private sale of Jones's property to satisfy a tax delinquency by the Arkansas Commissioner of State Lands after the Commissioner had attempted twice by certified mail to notify Jones of his tax

delinquency and of his right to redeem the property but both certified letters had been returned unclaimed. *Id.* at 223–25, 126 S. Ct. at 1712–13. The Court held that to comport with due process, when the State was made aware that certified letters went unclaimed, it must have taken additional steps to attempt to notify a property owner before selling his property for delinquent taxes if it was practicable to do so*. Id.* at 225, 126 S. Ct. at 1713. Based on *Flowers,* the Mandels contend that Lewisville ISD and the other tax entities could not sell their home without any evidence in the record showing the manner of service of the notice and order of sale.

*Flowers* is distinguishable. First, the sale of Jones's home in the *Flowers* case was a private, non-judicial sale whereas the sale of the Mandels' home in this case was by judicial foreclosure by public sale with the protections afforded by service of citation on the Mandels, providing notice and an opportunity to appear in court for a meaningful hearing before the final judgment ordering sale of their home for payment of the delinquent taxes. *See id.* at 224, 126 S. Ct. at 1712. Second, *Flowers* is distinguishable because the evidence in that case showed that the State was aware that the property owner had not received notice because its certified letters had been returned "unclaimed." *See id.* at 227, 126 S. Ct. at 1714. Third, *Flowers* was not a restricted appeal under Texas law in which the error must appear on the face of the record. *See id.* at 224–25, 126 S. Ct. at 1713. Unlike the record in *Flowers*, there is no evidence on the face of the record that the Mandels did *not* receive service of process of the original petition,

26

copies of the amended petition and interventions by certified mail, notice of the trial setting, copies of the judgment, or notice and the order of sale. The record affirmatively shows the contrary, that the Mandels were properly served with citation of the suit to foreclose and sell their property, which also put them on notice that the other taxing entities named could properly intervene without additional service, and that the sheriff's signed return of the notice and order of sale confirmed that he mailed copies of the notice of sale to the Mandels.

The United States Supreme Court in *Flowers* articulated concerns that simply are not present in this case. The foreclosure procedures followed by the taxing authority in *Flowers* were vastly different than what transpired in this case. According to Arkansas law as revealed by the *Flowers* opinion, the Arkansas Commissioner of State Lands (at least at the time of the opinion) had authority to foreclose on delinquent taxes simply by notifying the property owner by certified mail that property taxes were delinquent and that the tax liens were subject to foreclosure. *See id.* at 223, 126 S. Ct. at 1712. The property owner was given two years to pay the delinquent taxes. *Id.* If the taxes were not paid within that time frame, the property could be sold by public sale to satisfy the outstanding taxes owed on the property, and when no bids were submitted after the notice of public sale was posted, Arkansas law permitted the state to negotiate a private sale of the property. *Id.*

In *Flowers,* the Commissioner sent two notifications to the property owner by certified mail as required by law advising that the taxes were delinquent and

27

that the property was subject to foreclosure. *Id.* at 223–24, 126 S. Ct. at 1712. Both notices were returned unclaimed by the United States Postal Service. *Id.* at 223–24, 126 S. Ct. at 1712–13. After the two notices were returned by the post office, the Commissioner made no further attempts to notify the property owner of the impending tax foreclosure. *Id.* It was uncontroverted that the property owner in that case never received any notice that his property would be or was sold for taxes. *See id.* at 223–25, 126 S. Ct. at 1712–13.

The Supreme Court stressed that the notices provided to the property owner were defective because the Commissioner *knew* that the property owner never received the notices. *See id.* at 237, 126 S. Ct. at 1720. The Supreme Court deemed this uncontroverted failure to provide notice to be a violation of the property owner's due process rights. *Id.* at 239, 126 S. Ct. at 1721. The Court held that, under the circumstances, the State had a constitutional duty to take further steps to notify the property owner of the foreclosure sale. *Id.*

Section 34.01 of the Texas Tax Code requires the officer charged with the sale of real property sold pursuant to a foreclosure sale to give written notice of the sale to each person who was a defendant under the judgment in the manner prescribed by Rule 21a of the Texas Rules of Civil Procedure. Tex. Tax Code Ann. § 34.01(a), (c) (West Supp. 2014). Here, the record contains the sheriff's return on file, which states that the sheriff "mailed to the . . . judgment debtors a copy of said notice of sale," confirming that the order was executed. Pursuant to the presumption contained in Rule 21a, a sheriff's uncontroverted return is prima

28

facie evidence of the fact of service. *See* Tex. R. Civ. P. 21a, 661–62 S.W.2d XXXVII (1983, amended 1990). Thus, there is evidence in the record that the Mandels were provided with the notice of sale.

Moreover, silence as to whether notice of the order of sale was sent does not establish that it was not sent. *See Alexander*, 134 S.W.3d at 850. Nor does silence establish that notice of the order of sale was not received. *See id.* at 849–50. The absence of proof from the face of the record either way is just that—an absence of proof. *Id.* at 849. In a restricted appeal—where error must be apparent on the face of the record—silence as to whether notice was sent or received is insufficient to establish reversible error. *See id.* at 849–50.

As to notice of the order of sale, section 33.53 of the Texas Tax Code governs. *See* Tex. Tax Code Ann. § 33.53 (West 2008). Subsection (c) states that an order of sale:

> (1) shall be returned to the district clerk as unexecuted if not executed before the 181st day after the date the order is issued; and

> (2) may be accompanied by a copy of the judgment and a bill of costs attached to the order and incorporate the terms of the judgment or bill of costs by reference.

*Id.* § 33.53(c). Section 33.53 does not require the officer conducting the sale or the district clerk to note service on the property owner on the sheriff's return of the order of sale. *See id.* § 33.53. Consequently, the record is ordinarily silent as to whether the order of sale was served. *See, e.g.*, *Alexander*, 134 S.W.3d at 849 (noting that in cases dismissed for want of prosecution, the record is

29

ordinarily silent as to whether or not required notices were given). The fact that the record is silent as to the sending of the order of sale does not establish either that the notice was omitted or that it was served. Its absence is simply an absence of proof of error.

We agree with Lewisville ISD's argument that the officer conducting the tax foreclosure sale discharged the statutory duties set forth in tax code section 34.01 and rule of civil procedure 647. *See* Tex. Tax Code Ann. § 34.01; Tex. R. Civ. P. 647. And under Texas law, an officer who levies on property is not required to file any documentation with the trial court clerk evidencing the notices of sale sent to the defendants. Rule of civil procedure 647 requires the officer to publicly advertise the sale in a newspaper and send notice of the sale to the property owner but does not mandate filing documentation with the trial court clerk to demonstrate compliance. Tex. R. Civ. P. 647. In addition, tax code section 34.01(c) provides that the officer conducting the sale give written notice of the sale pursuant to Rule 21a to each person who was a defendant to the judgment (in person, by telephonic document transfer, or by registered or certified mail). *See* Tex. Tax Code Ann. § 34.01(c); Tex. R. Civ. P. 21a, 661–62 S.W.2d XXXVII (1983, amended 1990). But Rule 21a does not mandate that supporting documentation or certificate of mailing be filed with the trial court clerk to memorialize or confirm the sending of notice. *See* Tex. R. Civ. P. 21a, 661–62 S.W.2d XXXVII (1983, amended 1990).

If the Mandels contend the officer executing the notice and order of sale

30

did not faithfully discharge the duties imposed by law with respect to the tax foreclosure sale, their alleged grievances regarding matters occurring after the default judgment was rendered must be directed toward other parties and presented in a different forum. *See Ginn*, 282 S.W.3d at 432 (holding that when a party claims in a restricted appeal that a required notice was not given or a required hearing was never held, the error must appear on the face of the record); *Gen. Elec. Co.*, 811 S.W.2d at 944 (holding evidence not before the trial court prior to final judgment may not be considered in a restricted appeal proceeding). The record in this restricted appeal shows strict compliance with respect to the service of citation and notices required in a tax foreclosure sale, and the Mandels' claim that the sale is defective has no support according to applicable law. Accordingly, we overrule the Mandels' fifth issue.

## V. Conclusion

Having overruled each of the Mandels' five issues, we affirm the judgment of the trial court against the Mandels. We also vacate our order staying execution of the writ of possession and lift our stay. Consequently, we also dismiss the Mandels' petition for writ of mandamus, seeking to have this court compel the trial court to vacate its order denying the Mandels' motion to quash or vacate the writ of possession and its order denying their motion to enforce the writ of supersedeas, as moot.

31

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and GABRIEL, JJ.

DELIVERED:  October 2, 2014

# APPENDIX



# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-13-00171-CV

ROSS MANDEL AND LEA MANDEL                    APPELLANTS

V.

LEWISVILLE INDEPENDENT                         APPELLEES
SCHOOL DISTRICT; COUNTY OF
DENTON, TEXAS; AND CITY OF
PLANO

------------

FROM THE 431ST DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO.  2011-0490-431

------------

AND

## NO. 02-13-00412-CV

IN RE ROSS MANDEL AND LEA                      RELATORS
MANDEL

------------

ORIGINAL PROCEEDING
TRIAL COURT NO.  2011-0490-431

-----------

# ORDER

-----------

On January 21, 2014, we abated this appeal and this mandamus action and ordered the trial court to conduct an evidentiary hearing to determine why Constable Ron Smith failed to comply with this court's November 13, 2013 order staying execution of the writ of possession issued by the trial court clerk on October 21, 2013, and to show cause why Constable Smith should not be held in contempt for failing to comply with this court's November 13 stay order.

After a hearing on February 5, 2014, the trial court sustained Constable Smith's objection to our January 21 order. We issued a subsequent order on February 28, 2014, once again directing the trial court to conduct a show-cause hearing to determine why Constable Smith should not be held in contempt of this court for failing to comply with our November 13 stay order. The February 28 order to show cause and notice to Constable Smith of that order were duly cited and served on Constable Smith and specifically enumerated the actions the trial court was permitted to take during the show-cause hearing. We reserved the power to make any necessary findings and conclusions after receiving the record of the hearing.

On April 21, 2014, the trial court conducted the show-cause hearing. The reporter's record of that hearing was filed in this court on May 21, 2014.

2

Constable Smith appeared at the hearing, was represented by counsel, and was permitted to and did testify in defense of this court's charge alleging that he violated this court's November 13 stay order. Two of Constable Smith's deputies, Chief Deputy Constable Wayne Bengston and Deputy James Ferguson, and Kurt Claussner, the purchaser of the property in question in the above-styled and numbered causes, testified on behalf of Constable Smith. David Brusilow, an attorney and friend of the Mandels who showed an electronic copy of the stay order to Constable Smith, also testified. The trial court thereafter referred the matter to this court to make any necessary findings and conclusions and to determine whether Constable Smith was guilty of contempt.

The contempt alleged in this matter—violation of a court order outside the presence of the court—is constructive contempt. *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995) (orig. proceeding). A finding of contempt for disobedience of a court order requires proof beyond a reasonable doubt of: (1) a reasonably specific order; (2) a violation of the order; and (3) the willful intent to violate the order. *Id.* However, the involuntary inability to comply with an order is a valid defense to criminal contempt, rebutting the willfulness element of contempt liability, "for one's noncompliance cannot have been willful if the failure to comply was involuntary." *Id.* at 261; *see also Ex parte Rohleder*, 424 S.W.2d 891, 892 (Tex. 1967) (orig. proceeding). The alleged contemnor bears the burden of proving his inability to comply. *Ex parte Chambers*, 898 S.W.2d at 261

3

(citing *Ex parte Kollenborn*, 154 Tex. 223, 226–27, 276 S.W.2d 251, 253–54 (1955) (orig. proceeding)). Additionally, a contemnor cannot be held in constructive contempt of court for actions taken prior to the time that the court's order is reduced to writing. *Id.*; *see Ex parte Price*, 741 S.W.2d 366, 368 (Tex. 1987) (orig. proceeding).

Having considered the pleadings, motions, orders, and briefs of the parties on file in this court, the reporter's record of the testimony of Constable Smith and of those named above as witnesses, the exhibits from that hearing, the verified and certified evidence offered by Ross Mandel and Lea Mandel in support of their mandamus petition, and the evidence proffered at the February 5 hearing, we find that the evidence conclusively establishes that Constable Smith was involuntarily unable to comply with our stay order for the simple reason that he learned of it too late.

The evidence establishes that Constable Smith did not learn of the issuance of our stay order until he was shown an electronic copy of it that was emailed to Brusilow by Edward Dennis, the Mandels' attorney of record, at 5:31 p.m. on November 13, 2013. The evidence further establishes that Constable Smith agreed, at Brusilow's request, to wait until Dennis arrived and that he did not receive or read the hard copy of the stay order until Dennis arrived at the house at approximately 6:30 p.m. But by 5:30 p.m., approximately ninety-eight percent of the Mandels' household furnishings and personal property had been

4

removed and trucks hired by the Mandels were carrying them away to storage; possession of the house, including the keys, had been turned over to Claussner at about 10:30 a.m. While there is no indication in our records as to precisely when the stay order was reduced to writing, the date and time stamp of this court's clerk's office shows that the motion for emergency relief was not filed in this court until 12:40 p.m. on November 13, and the order was not faxed to the Mandels' attorney and the other parties in interest until approximately 5:15 p.m. that day. Based on this evidence, we find that Constable Smith did not have willful intent to disobey our stay order, and we decline to hold Constable Smith in contempt.

Accordingly, it is **ORDERED** that the appeal and original proceeding are reinstated on this court's docket. The clerk of this court is directed to transmit a copy of this order to the trial court judge, the trial court clerk, the attorney of record for each of the parties to the appeal and the mandamus action, the attorney who filed an amicus brief in the appeal, and the attorney of record for Constable Smith.

DATED July 1, 2014.

PER CURIAM

PANEL: GARDNER, J.; LIVINGSTON, C.J.; and GABRIEL, J.

5